ELLIOTT, Respondent, v. CHICAGO & ALTON RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, March 29, 1904.

1. **RAILROAD CROSSING: Statutory Duty.** A traveler approaching a railroad crossing has a right to rely upon the railway company's performance of its statutory duty to sound the whistle or ring the bell, thus warning him of the approach of an engine.

2. ———: **Duty of Traveler to Look and Listen.** And a traveler driving a wagon, when thus approaching a railroad track, where the view is obstructed, if he is in a position to hear the

bell or whistle, is not required to exercise the extraordinary precaution of stopping, tying his team and going forward on foot to a point where he can see if a train is approaching.

3. ———: ———. The evidence in this case examined at length and held that the plaintiff, who sues for damages caused at a crossing of a railroad track, by a collision with an engine, was not, as a matter of law, guilty of contributory negligence in not stopping before attempting to drive across and going forward on foot to see if a train or engine was approaching.

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED.

*Scarritt, Griffith & Jones* for appellant.

(1) Whether or not plaintiff's conduct, as shown by his admissions, the testimony of his own witnesses and the undisputed physical facts, was negligence is a question of law for the court. Turner v. Railroad, 74 Mo. 607; Davies v. Railroad, 159 Mo. 7; Henze v. Railroad, 71 Mo. 640; Buesching v. Gaslight Co., 73 Mo. 229. (2) Plaintiff proved conclusively that if he had stopped and listened he could have heard the engine approaching. Hook v. Railroad, 162 Mo. 569. (3) It is held that one has not "looked" so as to free himself from the charge of contributory negligence, who drives upon a railroad crossing where the view is at the time obscured by a cloud of dust, or smoke from a train just passed, or from a nearby factory. He should wait until his sense of sight could be effectively used. Benyon v. Railroad, 168 Pa. 642, 32 A. 84; McNamara v. Railroad, 64 Hun (N. Y.) 637; Foran v. Railroad, 147 N. Y. 718, 42 N. E. 722; Flemming v. Railroad, 49 Cal. 253. (4) The authorities are overwhelming to the effect that, under the circumstances, defendant's demurrer to the evidence should have been sustained. Stepp v. Railroad, 85 Mo. 235; Weller v. Railroad, 120 Mo. 649; Moberly v.

Railroad, 17 Mo. App. 543; Damrill v. Railroad, 27 Mo. App. 205; Powell v. Railroad, 109 N. Y. 613, 15 N. E. 891; Schmolze v. Railroad, 83 Wis. 659, 53 N. W. 743; Ashworth v. Railroad, 97 Ga. 306, 23 S. E. 86; Railroad v. Crisman, 19 Col. 30, 34 Pac. 286; Chase v. Railroad, 78 Me. 346, 5 A. 771; Brady v. Railroad, 81 Mich. 616, 45 N. W. 1110; Jensen v. Railroad, 102 Mich. 176, 60 N. W. 57; Clark v. Railroad, 47 Minn. 380, 50 N. W. 365; Merkle v. Railroad, 49 N. J. Law 473, 9 A. 680; Seefeld v. Railroad, 70 Wis. 216, 35 N. W. 278; Pepper v. So. Pac. Co., 105 Cal. 389, 38 Pac. 974; Salter v. Railroad, 75 N. Y. 273; Hager v. Railroad, 98 Cal. 309, 33 Pac. 119. (5) Plaintiff's contention that he had a right to rely upon defendant's ringing the bell or blowing the whistle is not well taken. It is only where a person is doing his full duty that he can safely rely on another's doing his duty. Clark v. Railroad, 127 Mo. 197. (6) The opinion heretofore rendered in this cause is in conflict with numerous decisions of our Supreme Court.

*P. H. Cullen* and *R. D. Rogers* for respondent.

(1) The only point defendant insists upon in his brief is that plaintiff was guilty of contributory negligence as a matter of law, and hence all other points are waived. Kansas City v. Walsh, 88 Mo. App. 276; In re Estate Cogswell, 93 Mo. App. 491; Corrigan v. Kansas City, 93 App. 173. (2) One approaching a railroad crossing has a right to presume that the railroad will obey the law in notifying him of the approach of its train by ringing its bell or sounding whistle when within 80 rods of the crossing. Labor v. Railroad, 46 Mo. 353; Crumpley v. Railroad, 111 Mo. 152; Kenney v. Railroad, 105 Mo. 286; O'Connor v. Railroad, 94 Mo. 150; Petty v. Railroad, 88 Mo. 306; Weller v. Railroad, 164 Mo. 180. (3) A traveler is not guilty of con-

tributory negligence as a matter of law because he fails to stop in approaching a crossing where his view is obstructed, nor is the traveler required to leave his horse and go in advance to the track and look up and down for approaching trains, and his failure to get out and make advance observations is no evidence of negligence. Huckshold v. Railroad, 90 Mo. 548; Kelly v. Railroad, 88 Mo. 534; Alexander v. Railroad, 112 N. C. 720; Hook v. Railroad, 162 Mo. 602. The general rule requires a traveler to look where he can see, listen where he can not see and to stop only when the circumstances are such that he can not listen without stopping. And whether he ought to stop is a question for the jury depending upon the circumstances of each particular case. Russell v. Receivers, 70 Mo. App. 95; Mayes v. Railroad, 71 Mo. App. 142. (4) A traveler will not be chargeable with contributory negligence for failing to stop and listen if the approaching train could not have been seen had he stopped, nor heard, because it made so little noise, had he listened. Baker v. Railroad, 122 Mo. 544; Donohue v. Railway, 91 Mo. 363; Dahlstrom v. Railway, 108 Mo. 525; Hinze v. Railroad, 71 Mo. 636; Masterson v. Railway, 58 Mo. App. 574; Huckshold v. Railway, 90 Mo. 556; Johnson v. Railroad, 77 Mo. 546; Winstantz v. Railroad, 72 Wis. 375; s. c., 39 N. W. 856; Davis v. Railway, 47 N. Y. 400; McGuire v. Railway, 2 Daly (N. Y.) 76; Hinkle v. Railway, 109 N. C. 472; s. c., 26 Am. St. 581; Railroad v. Lee, 87 Ill. 454.

BLAND, P. J.—Main street in the town of Farber, Audrain county, Missouri, runs north and south. The tracks of the defendant railroad company run east and west through said town and cross Main street at right angles. South of the track at the crossing of Main street, and eight and one-half feet from the main track, is a side track. A sixteen foot crossing constructed of planks was laid over these tracks to form a crossing on

Main street.  On the morning of November 11, 1902, plaintiff, a farmer living north of Farber, brought a two-horse wagon load of corn into town, drove along Main street, crossed over the tracks and unloaded his corn in a crib a short distance south of the tracks.  He then started back to his home, driving north on Main street; when he reached the crossing, an engine and tender backing west on the main track collided with his team, killed his two horses, smashed his wagon, and threw him to the ground, doing him some injury, not, however, of a permanent character.  The suit was to recover the damages caused by the collision.  The negligence of the defendant, upon which plaintiff predicated his right to recover, was that defendant negligently ran its engine at a rapid rate of speed over the crossing, failed to keep a lookout for persons on the crossing, and failed to sound the locomotive whistle as it approached the crossing, or to ring the bell and keep the same ringing until the crossing was passed, and negligently failed to give any signal or warning whatever of the approach of the engine.

The answer was a general denial and a plea of contributory negligence.

The trial resulted in a verdict and judgment in plaintiff's favor for fifteen hundred dollars.  Defendant appealed.

At the close of plaintiff's evidence and again at the close of all the evidence, defendant asked peremptory instructions to be given to the jury to find for it.  The court refused to give these instructions.  The ruling of the court on these instructions is the only error relied upon by defendant for a reversal of the judgment.

The contention is that plaintiff's own admissions as a witness, as well as the whole evidence, show that plaintiff, as a matter of law, was guilty of negligence that directly contributed to his injury and for this reason he can not recover.  It is conceded that plaintiff's view to

the east, as well as to the west, as he approached the crossing on Main street was obstructed by cars standing on the side track and by an elevator standing east of him near the track, and that he could not have seen the engine for at least a half a mile by looking toward the east, without first placing himself north of the side track, on account of these obstructions. It is also shown that cars standing on the side track were so near the crossing on Main street that a space of not more than twelve or fourteen feet was open at the crossing for the passage of teams. The plaintiff's own evidence shows that, without stopping, he drove upon the crossing, that when he cleared the side track, and when his horses were on the main track, he could then look east down the track and did look and saw the engine was upon him. He testified that before driving upon the track he listened for a train but heard none; that he heard no whistle blowing or bell sounding; that when he drove into town he saw an engine at the depot (west of the crossing) and while he was unloading his load of corn at the crib he heard a train going by and thought the train had pulled out and gone on east. He further testified that by stopping his team before going on the crossing, and getting out and walking past the side track he could have seen down the track to the east for a mile or more. It is shown that the grade of the track to the west was slightly descending and that the engine, at the time of the collision, was running without exhausting steam and was making scarcely any noise. There was a corn sheller in operation near by, on the south side of the track, that was making considerable noise. For the plaintiff, a number of witnesses in a position to hear, testified that they did not hear the engine whistle and that the bell was not rung until after the engine struck plaintiff's wagon, and that the speed of the engine was from twenty to thirty miles per hour. For defendant the evidence is that the whistle was blown three times,

eighty rods west of the crossing; that the bell had an automatic ringer and that it was put in operation and the bell sounded continuously until the crossing was passed, and that the engine was moving at a speed of from fifteen to twenty miles per hour.

It is conceded that when the wagon came into view of the engineer, the engine was so close to the wagon that it was impossible to stop it in time to avoid the collision. The evidence on the part of plaintiff tends to show that defendant's engineer was guilty of negligence in failing to sound the whistle or ring the bell of the engine in the manner required by statute (sec. 1102, R. S. 1899) as he approached the crossing. On account of this negligence, plaintiff was entitled to have his case submitted to the jury, unless his admissions, or the whole of the evidence, show that he was, as a matter of law, guilty of negligence directly contributing to his injury.

It is insisted that the evidence of Tribue, White, Shotwell and Machem, witnesses for plaintiff, taken in connection with the evidence of plaintiff, shows conclusively that if plaintiff had stopped and listened, he could have heard the engine and tender as they were backing towards the crossing and that he could have seen the engine as he was driving from the crib to the street, if he had looked at that time. To correctly estimate the value of the testimony of these witnesses, their surroundings and their viewpoints, from which they made their observations of the movements of the engine and tender, must be taken into consideration. Just east of the crossing is a cut ending at a cattle guard four hundred feet east of the crossing, and a quarter of a mile or more east of the cattle guard is a coal chute and pond; on the south bank of the pond were growing willows which obstructed the view and prevented a person standing at or near the crib or in Main street east of

the crossing from seeing the engine at the coal chute. The engine backed westward from the coal chute. The crib where plaintiff delivered his corn was in a field forty-five feet east of Main street. The gate entering the field to go to the crib is eighty or ninety feet south of the crossing. Fifty feet east of the crossing, on the south side and within a few feet of the railroad track, is an elevator. Near this elevator was a corn sheller in operation which was driven by a traction engine. Tribue placed himself near the cornsheller. From this point of view, he testified that he heard the engine as it backed up; that the whistle was not sounded nor the bell rung until after the engine collided with the plaintiff's wagon; that he saw the engine at the coal chute and until it entered the cattle guard but that he could not see it after that on account of the elevator and cars standing on the track. White placed himself on the railroad right of way on the south side of the track near the depot and about four or five hundred feet west of the Main street crossing. He testified he saw plaintiff drive through the field gate into the street; that just as plaintiff reached the gate he was driving in a trot but slowed up as he came through the gate "to the next thing to a walk;" that plaintiff was holding his team, checking it up; that he looked west about the same time and saw the engine; that the engine was running over twenty miles an hour at the time it struck plaintiff, and no signals were given until after plaintiff was struck, then the bell was rung; that the engine was slipping along and did not seem to make any noise. Shotwell testified that he was running the threshing machine engine to operate the cornsheller; that he did not see the engine untill after it collided with plaintiff's team and wagon; that he then saw the engine and heard the bell ring for the first time. Machem testified that he was at the corn crib unloading corn from his wagon when plaintiff drove from the crib; that he saw the en-

gine going west a short time after plaintiff had driven from the crib; that he could see the top of the engine as it came back and there was no motion of the bell; that it did not ring, the whistle was not sounded and the engine was not exhausting steam. The person in charge of the engine also testified that the engine was not exhausting steam; that it was gliding along without making scarcely any noise.

Several witnesses testified that as plaintiff's team trotted out of the field his wagon made considerable noise. The street was a dirt road, comparatively smooth, and the evidence is that the wagon made but little noise after it reached the street. All the evidence in respect to the cornsheller, is that it made considerable noise.

Tribue was fifty feet east of Main street and within a few feet of the railroad track. His position to see and hear the engine was, for this reason, greatly superior to plaintiff's and the court is not warranted to conclude, because Tribue heard the engine, that plaintiff would have heard it, if he had stopped and listened. A jury on its own responsibility might arrive at such an inference, but a court can not. White was on the south side of the railroad track where there was nothing to obstruct his view, and the fact that he saw the engine from where he stood does not show or tend to show that plaintiff might have heard it, nor does it show that plaintiff recklessly drove upon the track in a trot. Machem saw the engine while at the crib, but after plaintiff had driven away. From this scrap of evidence it is contended that plaintiff could have seen the engine before he got out of the field and that it was his duty to look from that point. It is not affirmatively shown that he could have seen it had he looked before driving out of the field. But suppose he could have done so. Must he be convicted of contributory negligence for failing to look for a train when he had not

reached the road leading to the crossing and when he was a hundred feet or more from the crossing? Tribue said he saw the engine as it passed in front of him. If this be so, then the engine must have been within fifty or sixty feet of the crossing at the time he saw it, and hence Tribue's evidence does not show or tend to show that the engine came in view of anyone in the field at the time plaintiff was driving across it. The evidence of these witnesses may tend to prove that plaintiff, had he stopped and listened before driving on the track, might have heard the engine coming, but it falls far short of showing conclusively that he would have heard it and hence fails to convict him of contributory negligence as a matter of law.

As the evidence is all one way that plaintiff could not have seen the engine had he looked, on account of the obstructions, he can not be convicted of negligence for failing to look unless it was his duty, in the circumstances surrounding him, to have stopped his team, alighted from his wagon, and gone on foot to the crossing to a point where he could have looked to the east down the main track. It is clear if he had done this he would have seen the engine coming toward the crossing and would have avoided the injury by remaining south of the track until the engine had passed over the crossing. Was it his duty to take this extraordinary precaution before attempting to go over the crossing? If so, then plaintiff's peremptory instruction should have been given. The plaintiff had a right to rely upon the company's performance of its statutory duty to sound the whistle or ring the bell and thus to warn him of the approach of the engine. Donohue v. Railway, 91 Mo. 357; Weller v. Railway, 120 Mo. 635. And if he was in a position to have heard the whistle or bell, he was not required to exercise the extraordinary precaution to stop, tie his team, and go forward on foot to a point where he could look and see the engine coming. Kelly

v. Railroad, 88 Mo. 534; Huckshold v. Railway, 90 Mo. 548.

The case of Holwerson v. Railway, 157 Mo. 216, cited and relied upon by defendant, is not in point, for the reason the facts are variant from those in the case at bar. The next Missouri case cited and relied on by defendant is Hook v. Railway, 162 Mo. 569. There were two opinions in that case; one by ROBINSON, J., concurred in by SHERWOOD and MARSHALL, JJ., that the judgment should be reversed; the other opinion by VALLIANT, J., concurred in by BRACE and GANTT, JJ., held that the judgment should be affirmed. BURGESS, J., voted to reverse the judgment and remand the cause. In order to dispose of the case, ROBINSON, SHERWOOD and MARSHALL, JJ., voted with BURGESS, J., that the judgment be reversed and the cause remanded for new trial. Nothing whatever was decided by a majority of the court, except that the judgment should be reversed and the cause remanded for new trial, and the case is not an authority on any of the controverted legal propositions discussed in either of the opposing opinions, and is not authority for the proposition that to clear his skirts of negligence as a matter of law, the plaintiff, in the circumstances detailed in this case, was required to get out of his wagon, tie his team and go on foot to the railroad crossing to see whether or not a train was approaching before attempting to cross the tracks. Circumstances might arise where ordinary prudence would require such a precaution to be taken by one before attempting to cross a railroad track on a public highway, but we do not think the evidence in this case conclusively shows that the plaintiff should have taken this extraordinary precaution, in the circumstances that surrounded him at the time, and the trial court was not authorized to say as a matter of law that it was plaintiff's duty to do so, but that it was a question of fact for the jury to pass on. We hold, therefore, that the

trial court did not err in refusing defendant's peremptory instructions and affirm the judgment. *Reyburn* and *Goode, JJ.*, concur.