### ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1910.

---

*(Continued from Volume 149)*

---

ADAM SMITH', Respondent, v. ST. LOUIS SOUTH-
WESTERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted June 8, 1910.
Opinion Filed June 14, 1910.

1. **RAILROADS: Collision at Crossing: Stopping, Looking and Listening: Reliance on Statutory Signals Being Given.** A traveler approaching a railroad crossing may rely on the performance by the railroad company of its statutory duty to signal the approach of a train, and where he is in a position to hear the whistle or bell if sounded, he need not stop, go forward to the track, and look both ways to see if a train is approaching.

2. ———: ———: **Failure to See Train: Physical Facts.** Where, in an action for injuries in a collision at a crossing, the evidence showed a failure to ring the bell or sound the whistle, and that, owing to a growth of weeds ten feet high along the highway, the engine could not be seen by the traveler until it was too late to avoid the accident, the testimony of the traveler and his companion that they did not know of the approach of the train, though they looked and listened for one, was not contrary to the physical facts, and the court on appeal cannot disregard it.

3. ———: ———: **Sufficiency of Evidence.** In an action against a railroad company for injuries to a team in a collision at a crossing, evidence *held* to justify a finding of actionable negligence on the part of defendant, in failing to give statutory signals.

150 App.] (1)

Appeal from Cape Girardeau Circuit Court.—*Hon Henry C. Riley,* Judge.

AFFIRMED.

*S. H. West* and *Wammack & Welborn* for appellant.

Plaintiff's contributory negligence prevents his recovery in this case. Stepp v. Railroad, 85 Mo. 229; Hayden v. Railroad, 124 Mo. 566; Kelsey v. Railroad, 129 Mo. 362; Hook v. Railroad, 162 Mo. 584; Sanguinette v. Railroad, 196 Mo. 466.

*T. D. Hines* for respondent.

(1) A traveler approaching a railroad crossing has a right to rely upon the railway company's performance of its statutory duty to sound the whistle or ring the bell, thus warning him of the approach of an engine. Elliot v. Railroad, 105 Mo. App. 523; Donohue v. Railroad, 91 Mo. 357; Weller v. Railroad, 120 Mo. 635. (2) It is well settled law that when the statutory signals are omitted when approaching a street or public crossing, and injury results, that a prima-facie case is made out and the burden is shifted to defendant to show that the omission of the signal was not the cause of the accident, and which it must do to the satisfaction of the jury. Donohue v. Railroad, 91 Mo. 357; Elliot v. Railroad, 105 Mo. App. 523; McCormick v. Railroad, 50 Mo. App. 112; Petty v. Railroad, 88 Mo. 306; Baker v. Railroad, 122 Mo. 533. (3) It was not the duty of plaintiff to get out of his buggy and go forward to the crossing and look for a train before attempting to cross over, because of the fact that his view was obstructed; for while the view was obstructed there was no noise to prevent the plaintiff from hearing the signal of the engine for the crossing had one been given at the proper distance. Kelley v. Railroad, 88 Mo. 534; Petty v. Railroad, 88 Mo. 306.

REYNOLDS, P. J.—Plaintiff and a companion were traveling in a buggy drawn by two mules. They came up to the railroad right of way of defendant from the south, then drove east along the south side of this right of way to the public crossing for a distance estimated by plaintiff's witnesses, at from seventy-five to two hundred yards west of the crossing of the public road, or, as testified to by defendant's witnesses, a measured distance of exactly four hundred and fifty feet west of the crossing, then turned south along the public road and drove up a rather steep incline to the top of the dump upon which rested the track. It appears that the railroad at the point designated was on an embankment, or dump, as it is called, some six or seven feet above the surrounding land. The dirt road along which plaintiff was driving, before it turned to cross the railroad track and as it neared the crossing, was over an old sawmill site, where there was old decaying and decayed sawdust, so that, as it is claimed, the buggy and the mules made but little noise in going over this part of it along the side of the railroad right of way. The team was being driven in a walk, not trotting. The testimony is to the effect that the railroad track, west of the crossing, runs straight and over a level country for about half a mile, being built along this stretch on the dump referred to above. There was testimony to the effect that the view of the plaintiff and his companion to the east of the crossing was unobstructed. Their view toward the west or back of them, and toward the track, according to testimony on the part of plaintiff, was obstructed by a thick growth of weeds from six to ten feet high and by willows growing upon and along the right of way of defendant, between the dirt road and the track, so that, according to the testimony of plaintiff and of his companion, the two men in the buggy could not and did not see above their tops or through them. To quote plaintiff, he testified that he was "just driving along and the right of way was all growed up

with weeds and willers, and it was almost impossible to see anything. . . . We was looking for trains. We drove up on the track and there was a loose engine within forty or fifty feet. I hit the mules to make the crossing and they wouldn't cross. I jumped out. They never whistled nor give no signal at all, or even rang the bell that we heard of. They did whistle just about the time they struck the mules—two little short whistles." Asked if the whistle had sounded at a distance of eighty rods away from the crossing, plaintiff answered, "No," nor did they keep the whistle sounding as it approached the crossing, nor ring the bell. The right of way, he further testified, was grown up so that you could not see. The weeds and willows were on the right of way west of the crossing and on the side of the dump. He further testified that these weeds, willows and briars growing along there were six feet and more high. "I am satisfied," said plaintiff, "that some of them were ten feet high. I am sure they were that high." On cross-examination counsel for defendant said to him that he had testified to the jury that on account of this growth he could not see an engine and cars on the track at that point. Counsel then asked him if at the time he turned and went on the right of way, if he had stopped and listened to see if he could hear a train coming on that track. Plaintiff answered that he did not stop, but had listened and looked for a train and kept on moving very slowly and did not see the train until his mules were on the track or just in the act of going on the track, and the train or engine was then about forty or fifty feet from him. Asked if after he saw the train he did not have plenty of time to have driven across if his mules had gone, plaintiff answered he did not think so, that he thought if the mules had crossed there they (meaning the engine) "would have got us, mules and all." Givens, the man who was in the buggy with plaintiff and who was driving, testified that they did not see the train until it was on them;

that the train was a loose engine with the tender attached; never heard it until it was too late; never heard it at all until they saw it, "and it was pretty near on us when we saw it;" heard no signal; if one had been sounded could have heard it; there was nothing to hinder from hearing; was driving along in a walk and stopped within about three hundred yards of the road and were there awhile and then got in the buggy and drove across. Asked if they looked and listened for the train, he answered that they could not have seen it from where they looked; saw the train after they drove up on the crossing but "you could not see it until you got on the track the way the condition of the track was in, weeds and willers and everything else, and the shape the road came up to the track, too." The weeds and willows and growth had leaves on them and were green. As near as witness knew the names of the weeds, they were wild sunflowers; there were other weeds, wild grass and the willows; the weeds were tall weeds. Heard no signal; no whistle, no bell, at the distance of eighty rods from the crossing. If either had been sounded did not hear it. On cross-examination, asked if as he approached the track dump he could have looked up and down and seen the engine, the witness answered that if a man drove up and looked he could have seen if he got in the middle of the track, but he could not do that before he got up on the middle of the track. Asked if before putting the team right on the track, they could have seen down the rock ballasted road where there were no weeds, this witness answered that "until about the time you got on the railroad dump you could not have looked up, you could have looked up, but saw nothing." They did not stop, did not see the engine. Asked if he and plaintiff were drunk, he denied it and stated that he had not drank anything that day except a glass of beer but had drank a little whiskey two days before. Asked if he and the plaintiff were listening for the signal, he answered a

man could have heard it if it had whistled if he had not been deaf.

The engine was coming from the west; that is, coming from the direction in which plaintiff and his companion had themselves come. When the mules reached the top of the dump and were on the track, they stopped. Plaintiff, seeing the danger, endeavored to drive the mules across, but the mules balked. Plaintiff and his companion jumped out of the buggy and escaped injury but the engine struck the hind legs of the mules and injured them and the mules were killed. In addition to the testimony of the plaintiff and that of his companion, there was that of two or more of his witnesses, to the effect that there was no sound from the approaching engine, no whistle blown, no bell rung, until immediately before the engine struck the mules, when two or more blasts of the whistle were sounded. The testimony on the part of the plaintiff further tends to prove that on the day the accident occurred and at the time, it was perfectly quiet, no noise made by the vehicle in which plaintiff was riding, to prevent them from hearing a bell or whistle or even any noise of the approaching engine. Both plaintiff and his companion testified that their sight and hearing were perfect. There was testimony tending to show that the weeds and undergrowth were close to the south of the county road and extended over the right of way to the dump. There was testimony on the part of the defendant, from the conductor and engineer of the engine, and from others, that the whistle had been sounded at the proper distance, where the whistling board was located for this crossing; that the engineer had whistled there for the crossing and that the bell, which is operated by an air bell ringer, was sounded. The engineer testified that he had seen plaintiff coming across the bottom and before he turned to the south at the crossing, when he, the engineer, was quite a way down the road, and that he slowed up the engine to give plaintiff ample time to cross or stop, and

that when he saw plaintiff was going to cross he (plaintiff) had plenty of time to cross, and he, the engineer, let the brake off and the engine rolled on; that he then saw plaintiff stop on the crossing and try to get the mules to back; that he (the engineer) slammed the brake on, but was too close to stop. The engine stopped just as it hit the mules. The foot piece of the pilot hit each mule on the hind legs and broke the legs. It is proper to say that the case was not tried on the theory that the defendant could have avoided the accident or that its employees in charge of the engine saw the danger of the plaintiff in time to have prevented the accident. We state these facts as above from the testimony of the engineer, to make the situation perfectly clear. There was also testimony on the part of defendant that there were only five willows on the right of way; that the roadbed was elevated some five or six feet; that this was so for a mile or more; that the weeds and willows were not high enough to obstruct a view of the engine and that the whistle and bell were sounded at the whistling post. These are substantially the facts in evidence. Plaintiff suing, based his right to recover on the failure of the defendant to give the statutory signals required to be given at public crossings; its failure to keep its right of way cleared of objects obstructing the view of persons approaching the crossing, and the failure of the defendant to give any signal for the crossing. There were other acts of negligence pleaded in the petition, but the case was tried on those above stated.

The defendant's answer, after admitting the incorporation and the operation of the road by it, charges that the damage sustained by the plaintiff in the loss of his mules was caused by his own negligence, directly contributing thereto, in that when approaching the public crossing he did not stop and look and listen for the approach of any train upon the defendant's railway but carelessly and negligently drove, or caused to be

driven, the mules in and upon the track of the defendant's road at the public crossing without making any effort whatever to ascertain if the train was approaching the crossing, and it is alleged in the answer that if the plaintiff had stopped his team before driving on to the defendant's track, plaintiff could have seen and heard the engine of the defendant approaching the crossing and by the exercise of ordinary care could have avoided the accident and the consequent damage resulting therefrom. There was a general denial by way of reply to these averments.

At the conclusion of the testimony for the plaintiff, and again at the close of the testimony in the case, defendant asked an instruction that the jury, under the pleadings and evidence, and upon the whole case, should find for the defendant. These were refused and exception duly saved. The court gave all the instructions asked by plaintiff as also all asked by the defendant with the exception of the instructions for a verdict in its favor. The jury returned a verdict for plaintiff, assessing his damage at $375. A motion for new trial was duly filed, and overruled, exceptions saved, and the case duly appealed by the defendant to this court.

The assignments of error relied upon are that the court erred in' overruling defendant's demurrers to the evidence, offered at the close of plaintiff's case and at the close of the whole case, and in overruling defendant's motion for new trial. We have read the entire testimony and were greatly aided to an understanding of the facts by the able and clear arguments at bar by counsel for appellant and respondent. The proposition relied on by the learned counsel for appellant is, in a nutshell, that the evidence in the case demanded that the trial court declare, and that we, as an appellate court should now hold, as a matter of law, that plaintiff, by his own carelessness, brought on the accident, and is not and was not entitled to recover. These cases are cited in support of that proposition: Stepp v. Railroad, 85 Mo.

229; Hayden v. Missouri, K. & T. Ry. Co., 124 Mo. 566;
28 S. W. 74; Kelsay v. Missouri Pac. Ry. Co., 129 Mo.
362, 30 S. W. 339; Hook v. Missouri Pac. R. Co., 162 Mo.
569, 63 S. W. 360; Sanguinette v. Mississippi River &
B. T. R. Co., 196 Mo. 466, 95 S. W. 386. Examination
of them does not lead us to think that either by similar-
ity of facts or by application of the principles of law
therein announced to the facts here in evidence, the
defendant has brought itself within them. The most
satisfactory statement of our view of the law as applica-
ble to this case at bar is in the case of Elliott v. Chicago
& A. R. Co., 105 Mo. App. 523, 80 S. W. 270, where
Judge BLAND, speaking for this court, and in a case
having many facts very similar to, indeed in a way
identical with, the facts in evidence in this case, states,
as a conclusion on such facts (1. c. 532) that the
plaintiff had a right to rely upon the company's per-
formance of its statutory duty to sound the whistle or
ring the bell and thus to warn him of the approach of
the engine, and if he was in a position to have heard the
whistle or bell, if sounded, he was not required to exer-
cise the extraordinary precaution of stopping, going
forward to the track and looking up and down the track
to see, if by any possibility, an engine was approaching.
We think that this is a correct statement of the law of
this State, and that under the facts in evidence in this
case, it is decisive of the case. We are not unmindful
of the rule of law, "that a court will treat as unsaid by
a witness that which in the very nature of things could
not be as said." Hook v. Railway, supra; McClanahan
v. St. Louis & S. F. R. Co., 147 Mo. App. 386, 126 S.
W. 535. But that rule is not applicable here for these
reasons: First, the gravamen of the complaint is failure
to ring the bell and sound the whistle, and there is
affirmative testimony of this; second, positive testimony
that owing to the growth of weeds and willows the
engine was not seen until too late to avoid the accident,
and we cannot say that it was contrary to the physical

facts for plaintiff to say he could not see over these weeds, when there is testimony that the weeds were ten feet high; third, these weeds were along the side of the road down which plaintiff was driving, between him and the railway, and the engine was coming upon them from the rear, was at the back of plaintiff, and if it is true, as testified, that it made no sound, then there was nothing to warn plaintiff, and there is nothing in the physical facts to warrant us in holding that what the witness said must from the very nature of things be treated as unsaid. Moreover, as there was evidence that these weeds were close to, and bordered the side of the public road, so that plaintiff was close up against them, if so, he could hardly see over them, even if they were not over six feet high, and could not see the engine even if it was on an embankment six or eight feet high. The case was clearly one for the jury, and there was ample evidence to warrant them in reaching the result at which they arrived. As there is no claim whatever of any error in the admission or exclusion of evidence or in the giving of instructions, and as none were refused except the instruction for a verdict for defendant, we are of the opinion that the case presents no elements or feature of misdirection or error of law requiring a reversal. The judgment of the circuit court is affirmed. All concur.