OMAR D. GRAY, APPELLANT, v. HEBER NATIONS, RESPONDENT.*

Kansas City Court of Appeals. December 2, 1929.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 3013, p. 1031, n. 33; Brokers, 9CJ, section 130, p. 660, n. 67; p. 661, n. 69, 71; p. 663, n. 79; New Trial 46CJ, section 1, p. 59, n. 8.

*Don C. Carter* for appellant.

*Ira H. Lohman* for respondent.

BOYER, C.—The case is an action to recover a broker's commission.. The petition alleges that defendant employed plaintiff to procure a purchaser for a certain newspaper, its equipment and good will, then being published in Jefferson City, Missouri. The name of the newspaper was The Daily Post. That defendant agreed to pay plaintiff the

sum of five per cent commission upon the gross amount of the selling price; that in pursuance of said employment plaintiff procured a purchaser who was accepted by the defendant, and that the defendant contracted to sell said property and did sell same to said purchaser on the 18th day of January, 1927, for the sum of $41,500. Plaintiff prayed judgment in the sum of $2075.

The answer was a general denial.

The case was tried before the court and jury, and a verdict was returned in favor of the defendant in the Circuit Court of Cole County on the 12th day of April, 1928. In due time plaintiff filed his motion for new trial naming ten specific grounds for same, and said motion was continued to the next succeeding May, 1928, term.

On the 28th day of May, during said May term, by leave of court, plaintiff filed what is called an amended motion for new trial, in which said motion all of the ten grounds contained in the original motion were set out *in haec verba,* together with an additional ground of newly-discovered evidence. The record proper shows that on the same date the court took up and considered said amended motion and same was overruled; and the bill of exceptions shows the time of the filing of the original motion for new trial, and a copy of said motion containing the ten grounds specified; also the filing of the so-called amended motion, together with a copy of said motion containing the ten reasons for new trial, alleged in the original motion, and an eleventh reason based upon newly-discovered evidence. The bill of exceptions further shows that on said 28th day of May, 1928, during the May term of said court, "said amended motion for new trial was taken up by the court, by and with the consent of counsel; and after hearing said amended motion for new trial read, the argument of counsel, and being made fully advised in all matters and things in said motion contained, the court overruled the same and refused to grant plaintiff a new trial of said cause; and to which action by the court in overruling his motion and in refusing and failing to grant to him a new trial herein, the plaintiff, by his counsel, then and there objected and excepted at the time and still objects and excepts."

The above recital is made because respondent insists that the original motion for new trial has never been overruled, that the amended motion was a nullity, and there is nothing before this court to review but the record proper, because the bill of exceptions fails to show any exception to the action of the court on the original motion for new trial. This will be considered in the opinion.

The evidence for plaintiff tends to show that plaintiff was engaged in the business of selling and consolidating newspapers, as a broker, and that in the latter part of 1925, or the early part of 1926, plaintiff and defendant discussed the newspaper situation in

Jefferson City. There were two afternoon papers then being published, The Daily Post by defendant, and the Democrat Tribune by one Koester. Plaintiff proposed that both publishers list their papers with him for sale with the suggestion that if he could obtain the listing, he thought he could sell both papers and consolidate them. Defendant refused to sign a written statement at that time, listing his paper for sale with plaintiff, but after some discussion about price, defendant finally said to plaintiff: "We don't seem to be able to agree on a price, but I'll say this; if you bring a purchaser to me and he agrees to pay me what I agree to accept, I'll certainly pay you five per cent." About the same time plaintiff obtained an option from Mr. Koester for the sale of his paper, and began efforts to obtain purchasers for the newspapers; he had numerous communications with various parties by letter, telegram and telephone, and brought various parties to Jefferson City as prospective purchasers for defendant's newspaper, as well as for the other paper; numerous conferences were held between defendant and plaintiff, and between defendant and the prospective purchasers whom plaintiff presented. About the month of August, 1926, plaintiff solicited and obtained the interest of E. H. Winter in the purchase of the newspapers, took him to Jefferson City as a prospective purchaser of The Daily Post, and took him to the defendant. The plaintiff was the first person who spoke to Winter about the subject of the sale of The Daily Post; that Mr. Winter worked largely thru plaintiff, and that he had numerous conferences both with Koester and Nations; that no one else ever suggested the subject prior to the time that plaintiff solicited him; that plaintiff was repeatedly in contact, by correspondence and otherwise, with the prospective purchaser, Winter, and with Nations, during a protracted period of negotiations.

The evidence further shows that on the 1st day of January, 1927, Mr. Winter purchased the Democrat Tribune from Mr. Koester. On the same day, plaintiff informed defendant of the sale, and that the purchasers of the Democrat Tribune would also buy his paper just as soon as they could obtain the money, and requested some time. Thereafter, plaintiff continued his efforts with Mr. Winter in reference to the subject, and on the 8th day of January, 1927, wrote a letter to defendant that on the Friday before Mr. Winter had telephoned him to come to Jefferson City; that he went there and met him and that Mr. Winter thought that he and his partner would have the money so that they could do business with the defendant some time during the next week; that plaintiff was doing everything in his power to procure Mr. Winter and his associates as purchasers of defendant's newspaper, and that he would see him soon. On the following day defendant called plaintiff on the telephone and said: "Don't fool around on this all winter because

you have had it a long time and I am embarrassed.'' The above communication referred to the sale of his newspaper; that plaintiff assured defendant that the purchaser of the Koester paper would also take his paper; that they would not have bought the Koester paper without a possibility of obtaining defendant's paper also. After the sale of the Koester paper to Mr. Winter, and at the request of Mr. Winter and others, plaintiff called upon defendant to obtain his lowest price for sale, at which time defendant wrote out and delivered to plaintiff his answer in the following words:

''I will sell my stock, and Mrs. Nations will sell her stock in the Daily Post Company for $40,000, cash, provided the buyer or buyers agree to assume the payment of $50 per month on a new No. 26 Linotype, to the extent of $1,500, and cost and freight and drayage on a carload of paper, just receiver, or so much of it as may remain in stock *pro rata*, on date of transfer of business.

''I will pay all bills of the corporation to date of transfer and collect and retain all moneys due the corporation and all cash on hand and in banks.

''HEBER NATIONS.''

On the 14th of January, 1927, defendant wrote plaintiff the following letter:

''Hon. Omar D. Gray,

''Sturgeon, Mo.

''My Dear Omar:

''The Post is not for sale, at any price, to anybody. This announcement was made necessary by an act of yours, largely, which looks like bad faith, but which I hope was only poor judgment.

''In compliance with my promise to you and to Mr. Speer, to afford you one final chance to effect a consolidation of the afternoon newspapers here, I agreed not to close a deal with Mr. Koester on the night of January 31, when he was at my office. I refrained from buying his paper that evening, or of selling him mine, solely because of that promise to you and to Mr. Speer, in order to afford you a final effort to effect a consolidation for Mr. Winter.

''Instead of making an effort at a consolidation, you closed a deal for the Tribune the next day, and then came to see me. As you know, an effort then was made to get me to reduce my price and terms, to which I did not agree.

''The crowning effort which compelled us to announce to the newspapers and to the world, that the Post was not for sale, was the statement you gave to St. Louis papers, that the deal for the Tribune had been closed, and a deal for the Post was pending. You realize, of course, that the publication of such a story affects the prestige of any newspaper very disadvantageously.

''I believe that if you had taken the same position as that taken by Mr. Speer, to-wit, that no deal should be attempted other than

a consolidation, in view of our agreement of the day before, a consolidation would have been effected by one of the parties interested.''

On the 18th day of January, 1927, a contract of sale of The Daily Post to E. H. Winter was executed. The contract recites that it is between The Daily Post Company, a Missouri corporation, party of the first part, and E. H. Winter of Warren County, Missouri, party of the second part. The contract was signed, ''The Daily Post Company by Heber Nations, President, Heber Nations, E. H. Winter. Attest: Alma Nations, Secretary.'' The purchase price recited was $40,000 and that the purchaser assume a debt of $1500.

On the 1st day of February, 1927, a bill of sale was executed signed by ''The Daily Post Company by Heber Nations, President. Attest: Alma Nations, Secretary,'' in which said bill of sale the grantor sold, assigned and transferred to the Tribune Printing Company, a Missouri Corporation, certain described linotypes, printing press, furniture, fixtures and numerous named items of property together with all equipment and personal property of every nature and kind used by The Daily Post Company, for the recited consideration of $40,000, free and clear of encumbrance except one of $1500 upon a linotype machine, which the grantee assumed and agreed to pay, in addition to the purchase price. It appears that the Tribune Printing Company, grantee in the bill of sale, was so named at the direction of Mr. Winter. Mr. Winter and his associates took charge of the property on the 2nd day of February, 1927, and then and thereafter paid the full purchase price of $41,500 for same.

Plaintiff requested the payment of his commission and defendant refused, after which this suit was instituted.

The evidence on behalf of defendant tends to show that he never at any time listed with plaintiff the sale of the newspaper in question; that defendant did not own said newspaper, but owned only certain shares of stock in the corporation which did own it; that the corporation was organized and capitalized for the sum of $25,000; that there were 250 shares of stock of the par value of $100 each; that defendant owned 231 shares and his wife owned two shares; that the remaining seventeen shares were distributed to, and held, by various persons; that defendant never at any time agreed to or offered to sell, and never at any time engaged plaintiff to sell, anything but the shares of stock of himself and wife in the corporation; that the understanding and agreement between him and plaintiff was that the two afternoon papers in Jefferson City were to be sold together, with a view of effecting a consolidation; that on the 31st day of December, 1926, the defendant and the owner of the other paper were about to close a deal between themselves by which either one or the other would sell and consolidate the two papers; that at the request of plaintiff and others the deal was not closed that night, but at plaintiff's request he was given one more day to effect a

sale and consolidation; that on the next day instead of consolidating and selling both papers, plaintiff sold the opposition paper without including in the sale defendant's paper. Defendant contends that this was the reason he broke off negotiations with the plaintiff, and declared that his paper was not for sale at any price, to anybody, and that this was done because he considered that plaintiff had been treacherous to him. Defendant testified that the original agreement between him and plaintiff was that plaintiff was to sell his stock, and that he later gave plaintiff a proposition at another price, but that this was in November or December of 1926; that defendant never did sell his stock in the corporation but still owns it, and is still willing to sell it for $40,000; that after he broke off negotiations with plaintiff he and Mr. Winter took up the matter on their own initiative; that plaintiff had misrepresented him and that it was none of plaintiff's business; that he would not have done it except for plaintiff's treachery. Defendant further testified that the members of the board of directors of The Daily Post Company were himself and wife; and before the sale was completed he was required to and did purchase the outstanding stock at a cost of $1500.

Instructions 1 and 2 were given for plaintiff as follows:

1

"The court instructs the jury that it makes no difference what financial interest the defendant Nations had as a stockholder in the Daily Post Corporation, but if you believe that he entered into the contract and agreement with Mr. Gray as set out in these instructions, then he is liable for the commission although as a matter of fact he only owned approximately $23,000 of the $25,000 capital stock of such corporation."

2

"The court instructs the jury that if you believe and find from all the evidence in this case that the defendant, Heber Nations, employed the plaintiff, Gray, to find a purchaser for the Jefferson City Daily Post, a newspaper and equipment and good-will, and if you find that defendant Nations agreed to pay plaintiff Gray a commission of five per cent on the total gross amount of any sale made by the said Gray of said newspaper and equipment, and if you find that plaintiff Gray interested the witness Winter in the purchase of said newspaper, and started negotiations whereby the said Winter did purchase the said newspaper and equipment, then if you find the purchase of said newspaper by the said Winter was the result of plaintiff's effort in that behalf, if any, and you find that the said Winter was influenced and induced by the said Gray to purchase said newspaper, and if you further find that plaintiff's efforts, if any, were the inducing and procuring cause of said sale

then you shall find for the plaintiff Gray in the sum not to exceed two thousand and seventy-five dollars with interest on any such sum you may find at six per cent from January 18, 1927, to this date, unless you should further find that the defendant Nations, in good faith, had withdrawn from plaintiff the authority to continue any further negotiations for the sale of said newspaper and equipment.''

Instructions given for defendant were A, B, C, and D, which are as follows:

## A

''The court instructs the jury that if you believe and find from the evidence that the defendant contracted and agreed with plaintiff as in plaintiff's petition alleged, and that no time was fixed as to when the agency should terminate then such employment is in law, only for a reasonable time, and what is a reasonable time depends on the intention of the parties as gathered from all the facts and circumstances in the case and if within a reasonable time as herein defined, plaintiff failed to consummate the sale and failed to induce Winter and Goshorn to buy then the defendant had a right to make a sale himself, without notice to plaintiff even to persons to whom plaintiff introduced him, and if under these circumstances, after a reasonable time, defendant sold in good faith, plaintiff cannot recover.''

## B

''The court instructs the jury that if you believe and find from the evidence defendant employed the plaintiff to sell his stock in the Daily Post Company that that fact does not authorize the plaintiff to recover in this case against the defendant, for sale of assets made by the Daily Post Company to the Tribune Printing Company, and if you find that a sale was made by the Daily Post Company to the Tribune Printing Company, or E. H. Winter, then you will find the issues for the defendant.''

## C.

''The court instructs the jury that the plaintiff can only recover in this case upon plaintiff's petition, which charges that Heber Nations agreed to sell the newspaper known as the Daily Post, and unless you do find from the evidence that Heber Nations agreed to sell the newspaper and printing plant known as the Daily Post then you will find the issues for the defendant.''

## D

''The court instructs the jury that if you find and believe from the evidence that the defendant only agreed with plaintiff to sell

his stock in the Daily Post Company and that no other contract or agreement was made between the plaintiff and defendant then you will find the issues in favor of the defendant.''

The above instructions are set out because appellant assigns as error the giving of all of defendant's instructions, and that they were erroneous, and in conflict with plaintiff's instructions.

## OPINION.

The first question for disposition is that raised by respondent. Was the motion for new trial overruled, exception saved thereto, and is there anything before this court for review but the record proper? It is respondent's contention that the bill of exceptions fails to show any exception to the action of the court on the original motion for new trial, and that the original motion has never been overruled. We cannot agree to his proposition, nor hold that the cited authorities sustain him. Respondent relies on the following cases: State v. Brooks, 92 Mo. 542, in which case defendant asked leave to file a supplemental motion for new trial fourteen days after he had filed his original motion, and the trial court refused to permit him to do so. It was held that the trial court had no authority to permit the supplemental motion for new trial to be filed after four days. Maloney v. Ry. Co., 122 Mo. 106, in which case no motion at all for new trial was filed, and the court held there was nothing before the court except the record proper. City of St. Joseph v. Robison, 125 Mo. 1, in which case motion for new trial was not filed until ten days after the verdict, and it was held that the motion was not filed in time and the bill of exceptions could not be considered. State v. Dusenberry, 112 Mo. 277, in which defendant asked leave to file an amended motion for new trial after four days and was refused. The Supreme Court held the ruling proper. Bank v. Bennett, 138 Mo. 494, in which it is held that the statute requiring the motion for new trial to be filed within four days after verdict is mandatory and therefore no amendment may be allowed. This case further holds, however, that a constitutional question which was not raised until presented in the amended motion, filed out of time, was raised before the trial court in the amended motion; that the question was before the court, that it passed upon it and the Supreme Court held that a constitutional question was involved in the record and that it had jurisdiction; and further held that defendant could not avail itself of that ground on appeal because it was not raised in the original motion. Bank v. Porter, 148 Mo. 176, a case in which appellant filed a timely motion for new trial and thereafter requested leave to file an amended motion, adding a new ground. The request was refused and it was held that an amended motion could not be filed after four days. Merrielees v. Wabash Ry. Co., 163 Mo. 491, in which defendant filed motion for

new trial in time and seventeen days after trial filed supplemental motion on the ground of newly-discovered evidence. The trial court refused to consider such matters and the Supreme Court held there was no error because the motion was filed out of time. State ex rel. v. Ellison, 256 Mo. 644, in which defendant filed timely motion for new trial and forty-seven days later filed what was called a "suggestion to the court," which was a suggestion that a new trial should be granted on newly-discovered evidence. A new trial was refused, and on appeal to the Court of Appeals this court held that the trial court had intimated that it should have granted a new trial and the cause was reversed and remanded. But on *certiorari* to the Supreme Court it was held that since the things that actuated the trial court to consider granting a new trial were the things set up in the "suggestions," and that inasmuch as they were not filed until after four days had expired, the trial court had no authority to consider them, and the verdict of the jury was reinstated. Brinton v. Thomas, 138 Mo. App. 65, a case in which plaintiff filed motion for new trial in time and later filed an amended motion out of time. The amended motion was exactly like the original motion with the exception of the last ground in the amended motion. The trial court sustained the motion for new trial, but on grounds that were assigned in the original motion, and not the one additional ground assigned in the amended motion. In that case it was contended that in attempting to amend the original motion, which was filed in proper time, and in refiling it as an amended motion the original was abandoned and could not serve as a foundation for the order granting a new trial. This court disallowed that contention and held that the original motion furnished a legal foundation for the order granting a new trial. It was held that the law did not permit the filing of an amended motion after four days, nor did the court possess any discretion in the matter, and that the rule that treats an amended pleading as a complete substitute for the original had no application. Blattner v. Metz, 80 S. W. 270, was disposed of with the brief observation that there was no showing that the motion for new trial was overruled and exceptions saved. The judgment was therefore affirmed.

We do not find support in any of the above cases for respondent's position in this case, but find support for appellant in the Brinton case. The questions presented, upon the facts in the other cases, do not directly involve the question in hand, and the rulings were upon other and different questions arising out of entirely different facts and circumstances. The exact question before the court in this case is whether or not appellant's motion for a new trial was ever passed upon by the trial court, and whether there is any exception here to a ruling of that character. We think that the record proper and the bill of exceptions not only show timely filing of the motion

for new trial, but also show clearly that the trial court considered each and every ground alleged for a new trial in the original motion, overruled same, denied appellant a new trial, and that exceptions were saved. We are of opinion that the office and function of a motion for new trial was completely filled by the procedure in this case, as shown by the record and bill of exceptions. The proper function of a motion for a new trial is to call the attention of the trial court to alleged errors committed by it, furnish an opportunity for their correction, and to show to the appellate court that such opportunity was furnished. The legal effect of filing the amended motion was equivalent to that of refiling the original motion. It amounted to nothing more than a presentation of the original motion under a new name and in a new frame. It was the same motion regardless of frame or name, and when the trial court considered it, all of the grounds for a new trial contained in the original motion were, *ex necessitate*, before the court. All of the grounds contained in the original motion were copied *verbatim* into the amended motion, and to say that the trial court did not consider them, and that they were not before the court when the motion was passed on is beyond the realm of reason. The bill of exceptions shows that the matter was presented to the trial court by agreement of counsel. It is devoid of any reference to, or any suggestion of, impropriety or irregularity at the time, and the whole question seems to be an afterthought of a sharp technicality upon which it is sought to impale, by surprise, an unsuspecting appellant and a wholly innocent trial tribunal. We regard it of no substance or consequence that the document which the court considered was called an amended motion. The name of a thing does not determine its character, and if the document filled the office of a motion for new trial and was so treated by the trial court, it will be so treated on appeal. By the filing of the amended motion it is not claimed, and could not be claimed, that appellant abandoned his original motion, because it was incorporated in the amended motion. The whole case is before this court on the record proper and the bill of exceptions. The point is ruled against respondent and the ruling is based upon what we consider to be the reasonable, practicable, and just intendment of the law. Support for this holding is found in the following authorities: Brinton v. Thomas, 138 Mo. App. 64; Fussellman v. Wabash Ry. Co., 139 Mo. App. 198; State v. Burns, 312 Mo. 673; Morgan v. Keller, 194 Mo. 663, 676; Bank v. Bennett, 138 Mo. 494, 500; Ormsby v. A. B. C. Fireproof Warehouse Co., 221 Mo. App. 779, 783; Vordermark v. Hill-Behan Lumber Co., 12 S. W. (2d) 498 (Mo. Sup.).

We will proceed to a consideration of errors assigned by appellant. It is contended that all of the instructions, A, B, C, and D, given at the request of defendant, are in conflict with in-

structions 1 and 2 given at the request of plaintiff, and that defendant's said instructions are misleading, confusing, and not responsive to the issues in the case. The theory upon which the case was submitted to the jury on behalf of plaintiff is shown in instruction No. 2, in which the jury was informed to find for plaintiff if it found that defendant employed plaintiff to find a purchaser and agreed to pay plaintiff a commission therefor, and if the jury found that a sale was effected and that plaintiff was the inducing and procuring cause of said sale, unless they should further find that defendant, in good faith, had withdrawn from plaintiff the authority to continue further negotiations. This instruction appears to be within the proper limits of the pleadings and the evidence and to present the actual issues to be determined by the jury.

Defendant's instruction A, in the first place, improperly refers the jury to plaintiff's petition for the alleged agreement between plaintiff and defendant, and then informs the jury that if they find from the evidence that no time was fixed as to when the agency should terminate, that the employment was in law only for a reasonable time, and what is a reasonable time depends upon the intention of the parties as gathered from all the facts and circumstances in the case. And then the instruction further says to the jury that if it finds that plaintiff failed to "consummate a sale" and failed to induce Winter and Goshorn to buy within a reasonable time, as therein defined, then the defendant had a right to make a sale himself to persons whom plaintiff introduced, and if defendant sold in good faith plaintiff could not recover. The instruction must be held to be erroneous for different reasons. In instructing the jury that plaintiff could not recover if he failed to "consummate a sale," a greater burden is placed upon plaintiff than he was required to bear. In no event would he be required, in this case, to consummate a sale. What he was employed to do was to procure a purchaser, and if he did in fact procure a purchaser, able and willing to buy on terms acceptable to the defendant, then plaintiff had completed his labors and had earned his compensation, whether any sale was ever consummated by any one. This instruction is not only erroneous for the reason stated, but is clearly in conflict with plaintiff's instruction 2, which, in effect, authorized a recovery by plaintiff if he produced a purchaser. We think further that, under the facts and circumstances in this case, defendant was not entitled to the condition of "reasonable time" incorporated in the instruction. There is no evidence revealed, by a careful examination of the entire transcript, of any condition of reasonable time, nor does the record show that defendant either in his answer or in his evidence made the issue that time was of the essence of the contract, and that he was not obligated to plaintiff because plaintiff had not procured a purchaser within a reasonable time.

Defendant, for a long period, continued negotiations with plaintiff and with plaintiff's prospective purchasers, to within a few days of the time when he actually closed the sale with the purchaser produced by the plaintiff. Under such circumstances defendant is in no position to claim that the plaintiff did not perform his work expeditiously or within a reasonable time. [Morgan v. Keller, 194 Mo. 663, 680; Tull v. Starmer, 188 Mo. App. 713; Hodges v. Ramsey, 216 S. W. 1. c. 570.] Conflicting instructions are necessarily confusing. They lead to error which cannot be called harmless. No one can say which of two conflicting instructions we adopted and followed by the jury. [State ex rel. v. Ellison, 270 Mo. 645, 656; Vance v. Anderson, 215 Mo. App. 525.]

We also regard defendant's instruction B erroneous for the reason that it has no proper application to the facts in evidence. It does not properly apply to any theory in the case. It could not in any way enlighten the jury upon any issue in the case, but is obscure and likely to mislead. It, in effect, tells the jury that if it finds a sale was made by The Daily Post Company to the Tribune Printing Company, or E. H. Winter, then the finding should be for defendant.

Instruction C improperly states to the jury that plaintiff's petition "charges that Heber Nations agreed to sell the newspaper known as The Daily Post," and the instruction further says, "unless you do find from the evidence that Heber Nations agreed to sell the newspaper and printing plant known as The Daily Post, then you will find the issues for the defendant." The petition does not charge that Heber Nations agreed to sell the newspaper. It alleges that defendant employed plaintiff to procure a purchaser for the newspaper, that plaintiff did procure a purchaser acceptable to defendant, and defendant made the sale. It is not clear what agreement is referred to in the instruction, whether the agreement with plaintiff, or the agreement of sale with the purchaser. Such an instruction breeds confusion.

We think that instruction D properly presented to the jury defendant's contention and theory of his contract with the plaintiff, which was that he proposed only to sell his stock in the company, and that no other contract or agreement was made between plaintiff and defendant. We will not comment further upon these instructions except to observe that plaintiff's instruction No. 1, predicates liability upon the existence of a contract alone, without performance. It is not approved. According to the views heretofore expressed, plaintiff is entitled to a new trial, and the instructions can then be drawn to meet the condition of the pleadings and evidence. The judgment should be reversed and the cause remanded. The Commissioner so recommends. *Barnett, C.,* concurs.

40

PER CURIAM:—The foregoing opinion by BOYER, C., is hereby adopted as the opinion of the court. The judgment is reversed and the cause remanded. All concur except *Trimble, P. J.*, absent.