LAWRENCE WISE, by next friend, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division Two, July 3, 1906.

1. **NEGLIGENCE: Perilous Position: Boy on Track: Vigilant Watch: Stopping Car: Warning.** A boy, seven years old, approached from the north a street car track at a street crossing, and seeing an east-bound car coming, stopped on the west-bound track for it to pass, and remained standing on the west-bound track until the car had stopped, discharged and received passengers, and started, and just as it got by, a west-bound car struck him and threw him over on the east-bound track, where he was found 20 or 25 minutes later. There was a good light near by, and besides the time was about 6:30 of an October evening. *Held, first,* that there was ample evidence that the boy was in a position of peril for sometime before he was struck, that defendant's servants failed to keep a vigilant watch, and that the motorman either saw or by the exercise of ordinary care could have seen the boy on the track in time to have stopped the car, running eight or ten miles an hour, before striking him; *second,* the failure to ring the bell or give other warning was negligence and a lack of ordinary care; and, *third,* the court properly overruled a demurrer to the evidence.

2. ———: **Contributory: Not Pleaded.** Contributory negligence must be pleaded to be of any avail as a defense.

3. ———: ———: ———: **Instruction: Humanitarian Doctrine.** If the facts upon which an instruction correctly embodying the humanitarian doctrine was based were found by the jury, contributory negligence was immaterial and no defense.

4. ———: **Instruction: Inapplicable.** An instruction asked by defendant explaining the meaning of the Vigilant Watch ordinance, wholly inapplicable to facts of the case, should be refused.

5. ———: ———: **Accident: No Evidence.** Where there was no evidence of mere accident or misadventure, but the whole case tendered by the pleadings and the evidence was whether or not the defendant was negligent, the court should refuse an instruction, asked by defendant, to the effect that if the jury believed that the plaintiff's injuries were due to mere accident or misadventure, for which neither party was responsible, then they must find for the defendant. Instructions should be confined to the issues and the evidence.

Wise v. St. Louis Transit Co.

6. ———: **Loss of Earnings: Seven-Year-Old Child: No Evidence.**
The evidence shows that the plaintiff was a seven-year-old
boy; that both bones of his right leg were broken; that his leg
was permanently crooked as a result of the injuries; and that he
had suffered concussion of the brain, which rendered him un-
conscious for nine days and affected his nervous system.  *Held*,
that there was evidence that his earning capacity had been
impaired, and that it was for the jury to determine whether
or not, under a carefully-drawn instruction which directed an
award for loss of earnings after plaintiff should reach twenty-
one years of age, plaintiff would be able to perform certain
kinds of labor, and what his loss from that inability would be.

Appeal from St. Louis City Circuit Court.—*Hon. War-
wick Hough*, Judge.

AFFIRMED.

*Sears Lehmann* with *Geo. W. Easley* for appel-
lant; *Boyle & Priest* of counsel.

(1)   There is no evidence of negligence in the rec-
ord.   Petty v. Railroad, 178 Mo. 125; Warner v. Rail-
road, 179 Mo. 666; Hanzelman v. Railroad, 88 Mo. App.
123; Molinaux v. Railroad, 81 Mo. App. 25.   (2)   There
is no evidence that the motorman could have avoided
the accident after the first appearance of danger to
plaintiff.   Petty v. Railroad, 179 Mo. 666; Campbell v.
Railroad, 175 Mo. 161; Dunn v. Railroad, 98 Mo. 652;
Cogan v. Railroad, 101 Mo. App. 179; Reno v. Rail-
road, 180 Mo. 469.   (3)   There is no evidence of a fail-
ure to give warning or establishing causal connection
between such failure and plaintiff's injuries.   Heinzle
v. Railroad, 182 Mo. 559; Petty v. Railroad, 178 Mo.
125; Hanzelman v. Railroad, 88 Mo. App. 123.   (4)
Instructions without evidence to support them are er-
roneous.   Pattison's Instructions to Juries in Missouri
Civil Cases (Ed. 1906), paragraph 95, and the fifty
Missouri cases there cited.   "A mere scintilla of evi-
dence" is not sufficient.   Commissioners v. Clark, 94
U. S. 284; Reichenback v. Ellerbe, 115 Mo. 588; Powell

v. Railroad, 76 Mo. 80; Bank v. Hamlin, 67 Mo. App. 487; Champagne v. Hamey, 189 Mo. 709. (5) Defendant was liable in this case for ordinary care only. Sluder v. Railroad, 189 Mo. 137; Gebhart v. Railroad, 97 Mo. App. 380. (6) Defendant's asked instruction 13 correctly defined the phrases of the ordinance. Petty v. Railroad, 179 Mo. 676; Jett v. Railroad, 178 Mo. 672; Roenfeldt v. Railroad, 180 Mo. 567. (7) Plaintiff was not entitled to recover for loss of earnings in the absence of proof of such loss. Slaughter v. Railroad, 116 Mo. 269; Brake v. Kansas City, 100 Mo. App. 615; Stoetzele v. Sweringen, 96 Mo. App. 592. (8) Under the circumstances of this case it was error to refuse instruction 11 to the effect that defendant was not liable if plaintiff's injuries were the result of an unavoidable accident. Maxey v. Railroad, 95 Mo. App. 309; Feary v. Railroad, 162 Mo. 99; Henry v. Railroad, 113 Mo. 537.

*Haverstick* and *A. R. Taylor* for respondent.

(1) Appellant in his first point and, as he states, his principal claim for reversal, says that his demurrer to the evidence should have been sustained. This plea is like that of the divine right of kings: "The king can do no wrong." Here, on this evidence, is a boy of seven years, standing on a crossing in the plain view of the motorman if he is doing his duty, directly in the way of the car standing still on the track, waiting for another of appellant's cars to pass east, so that he may proceed on his way. The boy, it is fairly inferable from the undisputed evidence, was visible as he stood there while one car came up and stopped, and then started again, for a half minute or more, in which time a car at the average gait would run about 600 feet. Is there any excuse, under this evidence, for the motorman not to have seen and warned the child? Is there any excuse, under this evidence, for the motorman not to have had his car under control, and either slowed down and

given time for the boy to step out of the way of the
car, or stopped the car? It is, we submit, unreasonable
to contend that a car cannot be stopped, or slowed up,
in 500 or 600 feet. They are bound to stop for passen-
gers at every stopping place where passengers wish
to get on or off cars.   (2)   Appellant's second conten-
tion is that plaintiff's instruction 2 is erroneous in
ignoring the child's contributory negligence. Contrib-
utory negligence was not pleaded, appellant says so.
This is unconsciously a complete answer to this con-
tention. Instruction 2 given at plaintiff's request, sub-
mitted the humane doctrine to the jury, where, of
course, if the facts predicated were found, contributory
negligence was immaterial, and no defense. This has
become the settled law in this jurisdiction. Reardon v.
Railroad, 114 Mo. 406; Klockenbrink v. Railroad, 172
Mo. 687; Scullin v. Railroad, 184 Mo. 707. (3) Instruc-
tion 13 is vicious in more ways than found by the trial
court, as admitted by appellant. The instruction was
essentially bad because it told the jury that the ordi-
nance provisions about keeping a vigilant watch for
persons, especially children, either on the track or mov-
ing towards it, and upon the first appearance of danger
stop the car, etc., "mean that the plaintiff was then
in a position of danger of being struck from which he
could not extricate himself by the use of ordinary
care." That the motorman should wait for this situa-
tion. This is error, because it repeals that portion of
the ordinance which contemplates danger to the person
when moving towards the track. Here is another view:
"And if the plaintiff had not then reached the track or
a point so near the same as to come in collision with the
car, then the motorman had the lawful right to assume
that the plaintiff would not go on or so near the track
as to come in collision with the car." Here, under this
predicate, the motorman sees the child moving directly
towards the track, unconscious of danger. He need do
nothing to prepare for the emergency, but may serenely

rest in the assurance that the child will stop before he gets in the way of the car. These are startling propositions of law, in the face of this ordinance, or, for that matter, at the common law. At the common law, if a motorman sees a man moving towards the track, and about to go into danger, it is his duty to take measures to meet the danger. Bunyan v. Railroad, 127 Mo. 22; Eckhard v. Railroad, 190 Mo. 618; Livingston v. Railroad, 170 Mo. 471. (4) The court gave, at the instance of the defendant, its instruction numbered six, declaring that unless the negligence of defendant was proven by a preponderance of the evidence, plaintiff could not recover. Counsel now complains because the court did not give his instruction about accident or misadventure. There was no evidence in this case of accident or misadventure. It was simply a case where defendant was negligent or not negligent.

GANTT, J.—This is an action by Lawrence Wise, a minor, by his next friend, against the St. Louis Transit Company, to recover damages on account of personal injuries sustained on the evening of October 30, 1902, whilst he was on a public crossing leading across Laclede avenue from the north to the south side thereof in the city of St. Louis, by being struck by one of the defendant's west-bound cars on Laclede avenue.

The crossing on which plaintiff was when he was struck was a raised brick crossing between two cross streets in a long block, and used by the public as a foot crossing, and a place where the defendant's cars stopped to receive and discharge passengers. The plaintiff at the time of his injury was a few months past the age of seven years, and lived with his parents at number 4213 on the north side of Laclede avenue near said crossing. He was sent across the street to order milk for the house at or near half past six on the evening of October 30, 1902. It was just getting dark. The boy was proceeding across Laclede avenue

on the said crossing from the north side to the south side of the street. When he reached the middle of the west-bound track one of the defendant's cars east-bound came to this crossing and stopped, and he was compelled to stop to wait for this car to pass on, which he did, and just as this east-bound car started up he was struck by one of defendant's west-bound cars and knocked across the east-bound track, where he was found unconscious fifteen to twenty-five minutes after he left home. There was evidence that there was no signal by bell as the car that struck the plaintiff approached the crossing and struck him. There was a city lamp on this crossing at its northeast end, and there was plenty of light on the crossing at the time the plaintiff was struck and injured. The injuries sustained were severe, both bones of the right leg below the knee were broken, and a number of pieces of bones were removed from the leg and pieces of the bones were split, and the bones protruded through the flesh, and he had concussion of the brain from which he was unconscious nine days.

The petition in substance alleges that Laclede avenue, at the places mentioned, was at the time the injuries are alleged to have been received, an open public street within the city of St. Louis; that on the 30th of October, 1902, plaintiff was passing southward across Laclede avenue upon a crossing between Sarah and Boyle avenues, when defendant's west-bound car in charge of its motorman and conductor was caused and suffered by said motorman and conductor to strike and greatly injure the plaintiff, causing a concussion of the brain of the plaintiff, a permanent injury to his nervous system, breaking the bones of his right leg and causing other injuries and bruises on his body, and permanent internal injuries. That the defendant and its motorman and conductor were negligent in causing said car to strike and injure the plaintiff, in this; that at the time of the plaintiff's injury they were causing

said car to run at a high and reckless rate of speed and
failed to keep any watch or to use any care to look out
for persons on defendant's tracks, or approaching
them, and failed to give any warning by bell or other-
wise of the approach of the said car to said crossing,
which negligence directly caused and contributed to
cause said car to strike and injure the plaintiff. It is
also averred that at the time of said injuries there was
in force within the city of St. Louis an ordinance of said
city by which it was provided that motormen and con-
ductors on street cars should keep a vigilant watch for
persons on the track, especially children, either on the
track or moving towards it, and upon the first appear-
ance of danger to said person or child the car should
be stopped within the shortest time and space possible,
but that the defendant's motorman and conductor
failed to keep such vigilant watch and failed to stop
said car on the first appearance of danger to plaintiff,
which violation of said ordinance directly contributed
to plaintiff's injuries; that by his injuries so sustained,
plaintiff has suffered and will suffer great pain of body
and mind, has been permanently crippled and disabled
from labor, has lost and will lose the earnings of his
labor, and his leg is deformed permanently, to his dam-
age in the sum of five thousand dollars, for which sum
he prays judgment.

The answer was a general denial.

The plaintiff testified that it was not yet dark, but
was getting dark; that he had started south over the
crossing from the north to the south side of Laclede
avenue; that he saw a car coming from the west going
east, there was plenty of light, he could see the car
plainly. There was light on the street where he was
standing. He stopped to let the east-bound car pass
him before attempting to cross the track. He stepped
in the middle of the west-bound track waiting for the
other car to pass east, that car came to a stop at the
crossing, and just as it began to start east a car going

west on the track on which he was standing came up and struck him. He testified that he heard no bell on the car that hit him. He testified that he saw the car that struck him just before it hit him and after that he did not know anything. The evidence further shows that Laclede avenue going west at this point is up-grade. The testimony further showed that the boy was so struck by the car that he was thrown and fell across the east-bound track on the east side thereof with his foot within about a foot of the south rail of the east-bound track, and that he was found at this point by his sister in an unconscious condition about twenty-five minutes after he left the house, she having been notified by a man that the boy was lying on the street.

The Vigilant Watch ordinance was read in evidence.

Dr. Haverstick was called immediately after the boy was removed to his home, and testified that the boy was perfectly unconscious and had a concussion of the brain, an injury to his right arm, a bruise and a compound complicated fracture of his right leg. Both bones in the foreleg were broken, the bones had run out through the flesh at least four inches, and they were broken in more than one place. There were pieces of bone broken off of the large bone of the leg. He exhibited some of the pieces of bone that came out of the limb, some of them four weeks after the injury and some three months afterwards. The boy was perfectly unconscious for eight or nine days after the injury, and had that peculiar breathing and was in that serious condition that you always have after a profound nervous shock. He treated the boy until the next July. He testified that he was assisted by Dr. Lutz in setting the limb, and that fairly good results had followed. The bones had united. He testified that the boy was more nervous and more excitable from the concussion of his brain. He testified to the suffering of the boy from his injuries; that it was impossible to keep him quiet

or have him sleep, although he had administered all the sedative medicines that were safe to give him.

Miss Minnie Wright, a trained nurse, attended the boy from the next evening after he was hurt for twenty-one days. She testified that he was in an unconscious condition for nine and a half days; that he suffered intensely; that he was kept under the influence of opiates all the time as nearly as could be.

Miss Rosa Wise testified that she was a sister of the plaintiff; that the family resided at 4213 Laclede avenue and had lived there about two years and a half before the injury. There was a crossing made of brick on Laclede avenue between Sarah street and Boyle avenue, and the street cars stopped at this crossing. She was at home on the evening of October 30th, and the plaintiff left the house to go across the street to order milk to be sent the next day. He started about half past six. When she next saw him he was lying in the street near the defendant's track with his foot near the track and on the south side of the east-bound track. His head was lying near the curb. When she reached him, plaintiff was unconscious. A gentleman helped her carry him home. She had been told that a little boy was lying there and she went to see and found it was her brother. This was about twenty minutes after he left the house to go for the milk. He was confined to his bed three months or more. Prior to his injuries he was a strong and healthy boy. After he got up his limb was still in plaster of paris. It was about four months before he could use his leg to step upon it. Asked as to whether there were any indications of pain, she testified that he screamed all the time while he was unconscious, and after he regained consciousness he complained constantly of suffering. A man came to their house and notified her that there was a boy lying down there. Their house was the only one that was right near there, and he told her that there was a boy injured there. When she reached her brother, there was a man

there who helped her bring the child in and left, she did not know his name, and did not ask him. She testified that one of the city gas lamps is exactly at the crossing on the north side of the street.

Mr. E. H. Wise, the father of the plaintiff, testified that he was out of the city on the evening that plaintiff was hurt, and reached home the next day and remained with him during the period of his serious illness. When he came home the boy did not recognize him. He was unconscious until the ninth day. Prior to his injury he was a strong and healthy child.

At the close of the plaintiff's evidence, the defendant prayed the court to instruct the jury plaintiff could not recover, which instruction the court refused and defendant excepted.

On the part of the defendant Charles Medlock testified that he was a driver for the Trinidad Asphalt Company on the 30th of October, 1902; that he was the man that came and told plaintiff's sister that there was a boy out there hurt. He thought it was about 7:30, or about that time. It was dark. When he first saw the plaintiff he was lying south of the east-bound track with his head towards the track. He did not pay any particular attention to the time but thought it was near 7:30. He drove by and notified a man.

A. W. Davis testified that he was the conductor on the car on the evening of the 30th of October that passed this location about 6:36 and knew nothing of the accident.

Edward McKinzie was a motorman on the car bound west about 6:40 p. m. that day and knew nothing of the accident. He first heard of it that night about 8 or 9 o'clock. His car did not strike the little boy. Their usual speed was about eight or ten miles an hour. About that time of day it was getting dusk, could not remember whether it was real dark or not, but they would have a headlight on their car at that hour.

Various other employees, motormen and conductors on the defendant's cars, testified to the effect that their cars did not strike the boy to their knowledge.

This was all the testimony in the case. The other facts and the instructions that are complained of will be noted in the discussion of the case.

I. The first insistence is that the demurrer to the evidence should have been sustained. The case was not submitted to the jury on the theory of excessive speed. The charges as to the violation of the Vigilant Watch ordinance, and as to the failure to give warning of the approach of the car, were submitted to the jury in the two instructions given for the plaintiff.

As to the failure to keep a vigilant watch and to stop the car on the first appearance of danger to the plaintiff, the defendant urges that there was no evidence as to where the car which struck plaintiff was, when plaintiff first approached the track, and no evidence as to the distance in which the car could be stopped, and no evidence as to the speed of the car, and as it was dark there was nothing to sustain this charge. We cannot agree to this contention. The evidence discloses that the plaintiff was a boy of about seven years of age; that he was standing on a crossing, or in the middle of the west-bound track. The testimony is that the boy had reached the crossing before the east-bound car came to that crossing, and stopped to wait for that car to pass before attempting to cross the south track; that there was plenty of light where he stood; he was then in plain view of the motorman going west on that west-bound track if the motorman was attending to his duty of keeping a vigilant watch as required by the ordinance for persons on the track, especially children. The east-bound car came to a full stop at this crossing and the boy stood still between the rails of the west-bound track during the stop of this east-bound car and until it started east.

The testimony was that these cars were running from eight to ten miles an hour going west that night. Considering the length of the time that the boy stood immediately between the rails directly in front of the west-moving car, waiting for the east-bound car to approach, stop, and then move, before he was struck, we think there was ample evidence for the jury to have found that had the motorman been observing ordinary care in looking for people that might be on his track, he either saw, or by the exercise of ordinary care could have seen, the boy standing there in ample time to have stopped his car as he approached from the east, and have avoided striking him, and there was no error in overruling the demurrer to the testimony on this ground. The assumption that it was dark is rebutted by the evidence in the case, which tended to show that there was both artificial and natural light enough to have enabled the motorman to have seen the child standing in the full light between the rails of the track on which his car was moving. In the circumstances it needed no expert testimony to demonstrate that a car traveling west at eight or ten miles an hour could not have been stopped in the time the west-bound car was traveling towards the boy while he was standing still waiting for the approach of the east-bound car and during the time that it stopped and until it began to move east. It was a question of fact upon which the jury was competent to pass without the aid of expert testimony.

Nor can we accept the predicate of the defendant that there was no evidence that the plaintiff was in a position of peril for any length of time. Counsel concede that if there was light, it might be inferred that a position of peril should have been discovered. The evidence shows that there was plenty of light. Moreover, the evidence tends to show that no bell or other signal was given the boy of the approach of the car which struck him. Human instinct exists in a boy of the age of seven or eight years, and if he had heard a

bell, that instinct would have urged him to escape the danger. Had the warning been given as ordinary care on the part of the motorman required, all the probabilities are that the injury would have been averted. And it was negligence not to have given the warning by ringing the bell or sounding the gong.

II. The second proposition advanced is, that the plaintiff's second instruction was erroneous in that it ignored the plaintiff's contributory negligence. In the first place, contributory negligence was not pleaded. The rule has ever been in this State that contributory negligence must be pleaded to be of any avail as a defence. A child is only to be held responsible for such care as children of his age, experience and discretion ordinarily use, under the same and similar circumstances. This was submitted to the jury under the first instruction given for the plaintiff. The second instruction submitted the humane doctrine to the jury, where, of course, if the facts predicated were found, contributory negligence was immaterial, and no defense. [Reardon v. Railroad, 114 Mo. l. c. 406; Klockenbrink v. Railroad, 172 Mo. l. c. 687; Scullin v. Railroad, 184 Mo. l. c. 707.]

There was no error in the second instruction. There was no issue of contributory negligence tendered by the pleadings, and if there had been, it would have been immaterial if the jury found the facts required by the second instruction.

III. The defendant prayed the court in effect to instruct the jury that the Vigilant Watch ordinance was invalid. It is now conceded by the counsel for the defendants that in the light of Sluder v. Railroad, 189 Mo. l. c. 136, this instruction was not the law.

IV. Defendant prayed an instruction as follows: "The phrases 'first appearance of danger' and 'becoming aware of the danger' or other like expressions, used in the ordinance read in evidence and these instruc-

tions, do not mean that plaintiff was seen approaching the track by the motorman, but mean that the plaintiff was then in a position of danger of being struck, from which he could not extricate himself by the use of ordinary care; and if the plaintiff had not then reached the track, or a point so near the same as to come in collision with the car, then the motorman had the lawful right to assume that the plaintiff would not go on or so near the track as to come in collision with the car, and the fact that plaintiff was moving towards the track does not constitute the appearance of danger meant by the ordinance, nor that the motorman thereby became aware of the plaintiff's danger so as to make it the duty of said motorman to stop or check the speed of his car, until it became apparent to him that the plaintiff would not stop, but would go on the track in front of the car.''

This instruction, it is perfectly clear, was utterly inapplicable to the facts developed in this case, and the court very properly refused to give it; independently of the fact that it was wholly foreign to the situation developed by the testimony, it was bad in various other parts. It is in conflict with the law declared in Bunyan v. Railroad, 127 Mo. 1. c. 22; Eckhard v. Railroad, 190 Mo. 618; Livingston v. Railroad, 170 Mo. 1. c. 471.

V. The defendant requested the court to instruct that unless the jury found from the evidence that plaintiff was injured by one of defendant's west-bound cars, and his injuries were directly due to the negligence of defendant's servant, plaintiff could not recover. The court had already given two instructions for the plaintiff and one for the defendant incorporating this requirement of proof of negligence on the part of the defendant, but this instruction went further, and the court was asked to instruct the jury, that if the jury believed that plaintiff's injuries were due to mere acci-

dent or misadventure, for which neither party was responsible, then they must find for the defendant. There was no evidence in the case of any accident or misadventure. The issue tendered by the pleadings and by the evidence was simply whether defendant was negligent or not, and the court was right in not inviting the jury into a field of conjecture and speculation. Instructions are always to be confined to the issue and the evidence in the case. There was no error in refusing it.

VI. The fourth instruction given on behalf of the plaintiff was as follows:

"If the jury find for the plaintiff they should assess his damages at such sum as they may believe from the evidence will be a fair compensation to him:

"1st. For any pain of body or mind which the jury may believe from the evidence he has suffered or will suffer by reason of said injuries and directly caused thereby.

"2nd. For any loss of the earnings of his labor after he shall have arrived at the age of twenty-one years which the jury may believe, from the evidence, the plaintiff has sustained by reason of said injuries and directly caused thereby.

"But you will not allow any sum for any earnings of his labor you may believe he may lose up to the time he becomes twenty-one years of age, and you will not allow any sum for loss of earnings of his labor thereafter unless you believe and find, from the evidence, that he will be disabled from labor and lose the earnings of his labor after he arrives at the age of twenty-one years as a direct result of his alleged injuries."

The sole objection to this instruction is that there was no evidence that his earning capacity had been in any way impaired. The evidence showed that both bones of the right leg of plaintiff were broken, and that

his leg was crooked by the injury. This broken leg was exhibited to the jury, and in addition to this the evidence showed that plaintiff had sustained a concussion of the brain, which had rendered him unconscious for nine days and which affected his nervous system. It was for the jury under these facts under this carefully guarded instruction, to determine whether or not plaintiff would be disabled to perform certain kinds of labor with such a leg. It was for the jury to determine whether or not the impairment of his nervous system would affect his earning capacity. The evidence was that before he was injured he was a strong, healthy child.

In Rosenkranz v. Railroad, 108 Mo. 1. c. 15-17, the jury were instructed among other things, that "they could take into consideration loss of earnings after he shall have attained the age of twenty-one years," and that instruction was assailed on the ground that there was no evidence from which the jury could infer what physical capacity for labor plaintiff would have possessed if he had not been injured, but this court said: "It is well settled that prospective damage to adults, on account of impairment of earning capacity in the future, is a proper element of damages in cases of personal injuries. [Whalen v. Railroad, 60 Mo. 323; Pry v. Railroad, 73 Mo. 124; 2 Sedg. Dam. (8 Ed.), sec. 485.] Ordinarily, damages will not be awarded to compensate for losses not yet experienced on mere conjectural possibility that such loss will occur. In the case of an adult proof should be made of 'previous physical condition and ability to labor, or follow his usual avocation, as well as his condition since the injury, to enable the jury to properly find the pecuniary damage.' [5 Am. and Eng. Ency. Law, 41, and authorities cited.] What may or may not be done by anyone in the future depends upon so many contingencies that prospective loss of earnings cannot be susceptible of direct and

198 Sup—36

conclusive proof even in case of adults.   Nevertheless such damages are uniformly allowed.   The impairment of the earning capacity of one in his infancy is as great a damage to him as though he had not been injured until the day he reached his majority. That he would have an equal right to compensation logically follows.   This plaintiff had never earned anything, and what his ability to labor or his capacity for earning money in business pursuits will be in the future, no one can tell with any certainty.   It is properly held in such case, in the absence of the existence of direct evidence, that much must be left to the judgment, common experience, and 'enlightened conscience of the jurors, guided by the facts and circumstances in the case.' "   [Grogan v. Foundry Co., 87 Mo. 326; Nagel v. Railroad, 75 Mo. 658; Davis v. Railroad, 60 Ga. 329; Fisher v. Jansen, 128 Ill. 551; Railroad v. Miller, 51 Tex. 275; Brunke v. Telephone Co., 112 Mo. App. 623.]

We think the instruction is not obnoxious to any just criticism in view of the well-settled law of this State.

We have been unable to find any reversible error, and the judgment is therefore affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.