## RAYMOND MOORE, by Next Friend, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, May 2, 1911.

1. **RAILROADS: Person Crossing Tracks: Duty to Look and Listen.** Railroad tracks, in and of themselves, signify danger, of which all persons of discretion are required to take notice, and the law requires such persons to look and listen before going on such tracks.

2. **——: Looking and Listening: Physical Facts: Evidence.** Evidence that one did not see an approaching locomotive, although he looked and listened therefor, when it is obvious that, had he looked, he could not have failed to observe it, will not be considered by the courts as possessing any probative value.

3. **——: Crossing Collision: Looking and Listening: Physical Facts: Evidence.** In an action for injuries received in a collision at a crossing, between a railroad train and a buggy driven by plaintiff, *held,* that the evidence tended to prove plaintiff's view was obscured sufficiently to prevent his seeing the locomotive anywhere near the crossing, and, therefore, the rule, under which evidence is disregarded when opposed to the physical facts, has no application.

4. **——: ——: ——: ——: ——: Evidence Viewed in Most Favorable Light.** In an action for injuries received in a collision at a crossing, between a railroad train and a buggy driven by plaintiff, in determining whether plaintiff's evidence that, although he looked and listened, he did not see or hear the approaching train is to be disregarded as opposed to the physical facts, the evidence as to the physical surroundings is to be viewed in the light most favorable to plaintiff.

5. ———: ———: Contributory Negligence: Right to Assume De-
fendant Is Obeying Law. One approaching a railroad crossing
is not required to anticipate the company's negligence, but
may rely on its performance of duty and assume that, if a
locomotive is in the immediate vicinity, it will be operated
so as to comply with ordinances as to rate of speed and as
to signals of approach.

6. ———: ———: ———: Looking and Listening: View Ob-
scured. Though one approaching a railroad track in a vehicle
is required to approach with caution, by looking and listening
until an obstruction of view is passed and keeping his convey-
ance under control, he is not careless as a matter of law
in failing to leave his place in the conveyance and go on the
ground to make a survey.

7. ———: ———: ———: ———: ———: Facts Stated. In an
action for injuries received in a collision at a crossing, be-
tween a railroad train and a buggy driven by plaintiff, the
evidence tended to show that plaintiff's view of the approach-
ing train was obscured until his horse's head was on, and he
was within fourteen feet of, the track, and, when his horse
was from six to twelve feet from the track, he leaned forward
and both looked and listened for a train, and, hearing no
sound, drove forward, with his horse under control. *Held*,
he was not guilty of contributory negligence as a matter of
law.

8. NEGLIGENCE: Proximate Cause: May be Established by In-
ference. The proximate cause of an injury may be established
by inference from facts and circumstances.

9. RAILROADS: Crossing Collision: Negligent Speed: Proximate
Cause: Question for Jury. In an action for injuries from a
collision between a locomotive and a vehicle at a crossing,
evidence *held* to present a question for the jury whether the
violation of a city speed ordinance by the railroad company
was the proximate cause of injury.

10. ———: ———: ———: Speed Prior to Collision: Proximate
Cause. In an action for injuries received in a collision at a
crossing, between a railroad train and a buggy driven by
plaintiff, in determining whether the operation of the train
at a greater rate than the maximum rate permitted by ordi-
nance was the proximate cause of the collision, not only is
the fact that the train was operated at a greater rate than such
maximum at the time of the collision to be considered, but its
operation at such greater rate within the radius of the plain-
tiff's vision is to be considered, as well, since he had the
right to assume defendant's servants would obey the require-
ments of the ordinance.

11. ———: ———: ———: Proximate Cause: Instructions. An instruction, in such a case, requiring the jury to find that plaintiff's injury resulted as a direct consequence of the excessive rate of speed of defendant's locomotive, is not subject to the objection that it fails to require the jury to find that the excessive speed was the proximate cause of the injury.

12. NEGLIGENCE: Railroads: Instructions: Failure to Define Contributory Negligence: Non-Direction. In an action for an accident at a railroad crossing, instructions requiring the jury to find that plaintiff exercised ordinary care are not erroneous for failure to define contributory negligence, since such failure amounts merely to nondirection, upon which reversible error cannot be predicated.

13. ———: ———: ———: ———: Covered by Other Instructions. In an action for an accident at a railroad crossing, instructions requiring the jury to find that plaintiff exercised ordinary care are not erroneous for failure to define contributory negligence, where defendant's instructions on that question sufficiently enlightened the jury.

14. DAMAGES: Infant: Impairment of Earning Capacity. In an action for personal injury to a child nine years old, damages may be awarded for loss of capacity for earning a livelihood after attaining his majority, though there was no evidence that he had ever earned anything nor that his financial condition was such that he would be required to subsist by his own efforts after attaining his majority.

15. DAMAGES: Personal Injuries: $7000 not Excessive. Where plaintiff suffered a complete complex fracture of the femur, a fracture of both bones in the left leg below the knee, a slight injury to his knee, and a permanent stiffening of his ankle, was rendered unconscious and dangerously ill for a number of days, suffered a hemorrhage from the ear and a severe shock to his nervous system, and his left leg was one and one-half inches shorter than the right, an award of $7000 damages is not excessive.

Appeal from Audrain Circuit Court.—*Hon. Samuel Davis,* Special Judge.

AFFIRMED.

*J. L. Minnis* and *Robertson & Robertson* for appellant.

(1) The court erred in refusing to instruct a verdict for the defendant for the reasons: (a) the proof

shows that the plaintiff was injured as the result of his own negligence in going upon the track in front of an approaching engine that he either saw or could have seen; (b) the plaintiff's proof does not show that the speed of the train was the proximate cause of the injury but on the other hand shows that notwithstanding the speed the collision would have occurred. Hayden v. Railroad, 124 Mo. 566; Railroad v. Clarkson, 147 Fed. 397; State v. Dettmer, 134 Mo. 435; Kelsey v. Railroad, 129 Mo. 362; Payne v. Railroad, 191 Mo. 215; Phippin v. Railroad, 196 Mo. 321; Sanguinette v. Railroad, 196 Mo. 466; Payne v. Railroad, 136 Mo. 580; Poster v. Railroad, 199 Mo. 82; Stotler v. Railroad, 204 Mo. 619; Weigman v. Railroad, 223 Mo. 699; Weaver v. Ry. Co., 60 Mo. App. 207; Newton v. Railroad (not reported.) (2) Plaintiff's first instruction is error; (a) it is indefinite and uncertain and does not point out to the jury the proximate cause of the injury. It should have been qualified with the following after the word "injured:" "and that if the engine had been operated at the lawful rate he would not have been struck thereby," or "and that except for such unlawful rate he would not have been injured," or by some definite language so as to direct the jury that the speed must have been such that without it the injury would not have happened. 29 Cyc. 489, note 33. And (b) because, notwithstanding the unlawful rate of speed, the plaintiff would still have had the collision. The burthen is upon the plaintiff to make proof of the particular act of negligence constituting the efficient or proximate cause of the injury. Stepp v. Railroad, 85 Mo. 229; Warner v. Railroad, 178 Mo. 125; Sapro v. Transit Co., 102 Mo. App. 250; Powell v. Ry. Co., 76 Mo. 80; Harlan v. Railroad, 65 Mo. 22; 29 Cyc. 488, 489, 490; Hudson v. Railroad, 101 Mo. 1, Same case, 123 Mo. 445; Kelley v. Railroad, 75 Mo. 138; Schmidt v. Transit Co., 140 Mo. App. 182; Campbell v. Transit Co., 121 Mo. App. 106; Moore v. Transit Co., 194 Mo. 1; Hol-

land v. Railroad, 210 Mo. 338; Kink v. Wabash Railroad, 211 Mo. 1. (3) The court erred as to both the first and second instructions given on behalf of the plaintiff because it failed to define the term "contributory negligence" as used in both of these instructions. Magrane v. Railroad, 183 Mo. 119; Landrum v. Railroad, 132 Mo. App. 717. (4) The court erred in refusing defendant's instruction No. 16 for the reason that the proof in this case showed that the plaintiff was capable of committing contributory negligence. Graney v. Railroad, 140 Mo. 101; Payne v. Railroad, 136 Mo. 562; McGee v. Railroad, 214 Mo. 530. (5) The court erred in refusing defendant's instruction No. 11. Boyd v. Railroad, 105 Mo. 371. (6) The court erred in giving the plaintiff's instuction as to the measure of damages in that it submitted to the jury the impairment of plaintiff's capacity for earning a livelihood after his majority when there was no testimony upon which to submit such hypothesis and such question could be one only of mere speculation on the part of the jury. (7) The verdict is excessive. A verdict for $7000 considering the injury and the results, and taking into consideration all of the testimony, especially considering the condition of the plaintiff at the time of the trial, is grossly excessive. The bones united perfectly. He is in good health, has a good constitution and except for the impediment in his walk, he will probably be able to do as much in a year or two as he ever would have been able to do in the way of labor, etc. Evers v. Ferry Co., 127 Mo. App. 244; Flaherty v. Transit, 207 Mo. 323; Garard v. Cole and Coke Co., 207 Mo. 255; Brady v. Railroad, 206 Mo. 540; Burke v. Railroad, 120 Mo. App. 691; Devoy v. Transit Co., 192 Mo. 225; Neves v. Green, 111 Mo. App. 642; McCaffery v. Railroad, 192 Mo. 152; Conner v. Nevada, 188 Mo. 162.

*D. A. Murphy* and *Barclay, Fauntleroy & Cullen* for respondent.

(1) No such judicial legislation has been attempted as to lay down the hard and fast rule that the traveler approaching a railroad crossing is bound under all circumstances to stop as well as to look and listen for approaching trains; but the courts generally agree that whether he ought to stop, in the exercise of ordinary care and caution, is a question for a jury, depending upon the circumstances in each particular case. But in this case the proof is overwhelming that a stop was made. Elliott v. Railroad, 105 Mo. App. 523; Frank v. Transit Co., 99 Mo. App. 323; Huckshold v. Railroad, 90 Mo. 548; Donohue v. Railroad, 91 Mo. 357; Mayes v. Railroad, 71 Mo. App. 142; Petty v. Railroad, 88 Mo. 318; Johnson v. Railroad, 77 Mo. 546; Russel v. Receivers, 70 Mo. App. 88; Baker v. Railroad, 122 Mo. 533; Kelly v. Railroad, 88 Mo. 534; O'Connor v. Railroad, 94 Mo. 150. (2) It is well settled law that when the statutory signals are omitted when approaching a street or public crossing, and injury results, that a prima facie case is made out and the burden is shifted to defendant to show that the omission of the signal was not the cause of the accident, and which it must do to the satisfaction of the jury. Roberts v. Railroad, 113 Mo. App. 6; McCormick v. Railroad, 50 Mo. App. 109; Turner v. Railroad, 134 Mo. App. 397; Mitchell v. Railroad, 122 Mo. App. 50. (3) Plaintiff cannot be said to be guilty of contributory negligence for the reason he and his companions satisfied the requirements of reasonable care by stopping, looking and listening. And hearing or seeing nothing of the engine, they cannot be guilty of negligence for moving toward the crossing. Those operating trains must give warning of their approach by ringing the bell or sounding the whistle. Elliott v. Railroad, 105 Mo. App. 523; Connor v. Railroad, 129 S. W. 780; Day v. Railroad, 132 Mo. App. 716. (4) Plaintiff's first instruction requires the jury to find that "as a di-

rect consequence of defendant's negligence" plaintiff was injured and is in the form often approved. Stotler v. Railroad, 200 Mo. 107; Connor v. Railroad, 129 S. W. 777. (5) In the absence of other evidence the unlawful rate of speed will be presumed to be the cause of the accident. Schlereth v. Railroad, 96 Mo. 515; Keim v. Railroad, 90 Mo. 321; Graney v. Railroad, 140 Mo. 89; Jobin v. Railroad, 18 S. W. 996; Prewitt v. Railroad, 134 Mo. 615; State v. Railroad, 15 Atl. 38. (6) The use of the words "contributory negligence" without defining them, constitutes non-direction, and is not error, and if error, it was cured by defendant's instruction given on that subject. (7) The instruction on the measure of damages is in the form approved in the following cases and there was ample evidence tending to show that plaintiff was permanently injured: Mitchell v. Railroad, 97 Mo. App. 417; Schmitz v. Railroad, 119 Mo. 269; Stotler v. Railroad, 200 Mo. 10.

NORTONI, J.—This is a suit for damages accrued through the negligence of defendant. Plaintiff, an infant suing by his next friend, recovered and defendant prosecutes the appeal.

Plaintiff received his injury while crossing defendant's railroad track on a public street within the city of Mexico, as a result of defendant's locomotive engine colliding with the surrey which he was driving. The view of the railroad track for a considerable distance east of the street crossing was obscured by a luxuriant growth of weeds, so that those traveling from the north on the highway were unable to discern the approach of trains, unless it was through the sense of hearing; and in this instance, the locomotive which collided with the surrey was single and alone, without a train attached, so that it emitted but slight noises to suggest its approach. Though at the time of his injury plaintiff was but a nine year old boy, he was accustomed to hitching up and driving the family horse to the surrey, which

course he had followed for more than a year. Plaintiff was driving the surrey to the southward on Morris street in Mexico when the collision occurred through the approach of defendant's locomotive from the east, while he sat on the right-hand, or west, side of the front seat of the vehicle. He was accompanied by his sister and two other young girls, all of whom were en route to a picnic outside of the city. Defendant's railroad track runs east and west through the city of Mexico along, immediately south of, and adjacent, to the right of way of the Chicago & Alton Railway Company, the tracks of which, it is said, are situate only ninety-nine feet north of the northmost rail of the Wabash. In the construction of the two railroads, immediately adjacent to each other, running east and west through the western portion of the city of Mexico, a considerable excavation was made for each and the earth removed therefrom deposited between the two tracks for several hundred feet east of, and adjacent to, Morris street. Morris street, a public thoroughfare of the city, runs north and south and crosses both railroad tracks near the western limits of the town. On the date of the accident, July 2, the embankment between the two railroads was covered with a luxuriant growth of weeds to within fourteen or fifteen feet of the north rail of defendant's tracks. Plaintiff, driving an open surrey with one horse, was moving southward on Morris street, the horse in an ordinary walk. The Chicago & Alton Railway tracks are first encountered from the north and ninety-nine feet south of such tracks are those of defendant. Plaintiff and all of the occupants of the surrey say they both looked and listened for trains as they approached the Chicago and Alton tracks from the northward and, seeing none, progressed forward for a distance more than half way between the Chicago & Alton tracks and those of defendant, when plaintiff stopped the horse and he, together with his companions, looked and listened for trains on defendant's road, but neither observed the locomotive

which occasioned the collision nor heard it. Plaintiff and his companions say that he stopped the horse at some point in the street seventeen or eighteen feet north of the Wabash tracks when he leaned forward over the dashboard and, besides listening, looked both ways for the approach of a train. At this point, the view was open to the eastward along the Wabash track for a short distance, but beyond that was obscured by the weeds, and, as no sound of a locomotive or train was heard, the party moved forward. Immediately upon the foremost feet of the horse stepping upon the north rail of the railroad tracks, defendant's locomotive engine was discovered but a short distance away coming forward at a high and dangerous rate of speed. Plaintiff pulled the horse around to the westward in an endeavor to escape a collision and succeeded to the extent of saving the life of the horse and all of the party, but the locomotive collided with the foremost wheel and the shafts of the surrey and inflicted both serious and permanent injuries upon plaintiff.

The specifications of negligence relied upon for a recovery are two in number, and relate to both the violation of the speed ordinance of the city of Mexico and the omission to perform the statutory duty of ringing the bell or sounding an alarm upon approaching the crossing of a public street. The ordinance of the city of Mexico, declared upon in the petition and introduced in evidence, prohibits the running of railroad trains at the point in question at a rate of speed in excess of eight miles per hour and denounces the act of doing so as a misdemeanor. The testimony not only established defendant's negligence in respect to operating the locomotive at the point in question at an unlawful rate of speed but abundantly supports the charge as well that no bell or other signal was being sounded on the engine. Even the evidence of defendant's engineer and others for it concedes the locomotive was being operated at a speed of twelve miles an hour when the collision occurred

whereas more than eight miles was proscribed by the ordinance. There is evidence for defendant that the bell on the locomotive was being sounded but it is slight, and, indeed, both its brakeman and fireman almost concede it was not. At any rate, there is an abundance of proof on the part of plaintiff that no bell or other warning was being given as the locomotive approached, and as no cars or train were attached, it glided along unattended by noise, for the track appears to be perfectly level. Indeed, so far as the negligence of defendant is concerned, the question is not controverted here, for the counsel frankly concede it, but insist plaintiff should be denied a recovery for the reason his own fault concurred with that of defendant and that the collision occurred as the result of the negligence of both which mutually operated as the proximate cause of the injury.

It is argued that, though plaintiff and his companions testified they stopped, looked and listened at a point about seventeen or eighteen feet north of the north rail of the Wabash track before driving forward, the court should nevertheless have directed a verdict for defendant, as it is obvious to have looked and listened at the point mentioned was to have seen the approaching locomotive. No one can doubt that railroad tracks in and of themselves signify danger, of which all persons of discretion are to take notice, and therefore the requirement of the law that one shall look and listen before going thereon. It is true, too, the courts will decline to accept evidence as of probative worth that one did not see an approaching locomotive, though he looked and listened therefor, when it is perfectly obvious that, had he looked, he could not have failed to observe it. But after a careful scrutiny of all of the evidence in the record, we are unable to discover such a situation here, for the evidence tends to prove that plaintiff's view was obscured sufficiently to prevent him from seeing the approach of the locomotive anywhere near the crossing.

As before stated, the parcel of land ninety-nine feet in width between the Wabash tracks on the south and the Chicago & Alton tracks on the north was incumbered with an embankment which was thrown up there from the earth excavated on building the roads. The apex of this embankment is forty-one feet north of the north rail of the Wabash track, at which point it is ascertained to be 9.66 feet above the level of the Wabash rail and 6.86 feet above the level of Morris street, which runs along immediately on the west side thereof. The embankment slopes from the apex northward to the Chicago & Alton tracks and from the apex to the southward toward defendant's tracks. At a point twenty feet north of the north rail of the Wabash track, the embankment is shown to be 6.16 feet above the level of the Wabash tracks and about four and a half or five feet above the traveled roadway in Morris street. From this point, it slopes gradually to the defendant's tracks. There is evidence in the case tending to show that all of this embankment was covered by what one of the witnesses denominated a "wilderness of weeds." There is some controversy in the case as to how high these weeds were, but all of the evidence concedes there was an abundant growth; that for defendant tends to show the weeds were from two and a half to three feet in height while some of the evidence for plaintiff tends to show they were as high as four and a half or five feet. After the weeds were cut, it is said the stubble left was from six to twelve inches in height and the weeds themselves when dissevered were from four to four and a half feet high. It appearing that at a point twenty feet north of the rail the embankment on the east was four and a half to five feet higher than the roadway of Morris street and that this was incumbered by weeds probably from four to five feet in height, it is certain that we are unable to say a view of the approaching locomotive engine was obvious to this small boy as he leaned forward over the dashboard of the surrey seventeen or eighteen feet north

of the tracks. Just what the height of the embankment was at seventeen or eighteen feet north of the track does not appear, but the evidence is, it slopes gradually toward the track from the twenty foot point given, and it appears the growth of weeds was about the same or more luxuriant on the south slope of the embankment than on its apex. It is conceded throughout the case that for ten feet north of the rail no weeds whatever incumbered the defendant's right of way and it is said too that one swath had been cut in the weeds by a man with a mowing scythe immediately along and adjacent to the north side of the railroad. The section foreman estimated this swath so cut to be six feet in width. But one of the men who aided in the work said it was from three and a half to four feet in width. Plaintiff is entitled to the most favorable view of the evidence on the argument now being considered and in that view it should be said the case discloses that no weeds whatever obscured the view for a distance of fourteen feet north of the rail. It appears the railroad was straight and level and if plaintiff had driven his horse down so that its head would have been on the track at the time he stopped and viewed the situation, it is clear from his position in the surrey he might have seen the locomotive approaching, for no weeds incumbered the right of way for a distance of fourteen feet north of the rail. But to have done this would have endangered an immediate collision before he had performed the duty which the law cast upon him of ascertaining whether probable dangers were present. It is said the horse's head was about ten or twelve feet from the track when plaintiff stopped, looked and listened but if he, seated in the surrey, was seventeen or eighteen feet from the track, the horse's head must have been within five or six feet of the rail, as the proof goes to the effect it was twelve feet from the horse's head to the foremost end of the surrey. Be this as it may, in the circumstances of the case, the precepts of ordinary care required no more, for to move nearer the tracks without

looking and listening involved the danger of a collision
before ascertaining whether there was or was not
probable danger. There can be no doubt of the proposi-
tion pertinent here that plaintiff was not required to
anticipate defendant's negligence but on the contrary he
enjoyed the right to rely upon its performance of duty.
So relying, he was authorized to assume that if a loco-
motive were in the immediate vicinity, it would both
comply with the ordinance by moving forward at a rate
not to exceed eight miles per hour and sound the usual
signals of approach. Though it be true that, when the
view is obscured to within a few feet of the rail, one is
required to approach car tracks with caution, by looking
and listening until the obstruction is passed and keeping
his conveyance under control so as to obviate as far as
possible such dangers as may come forward, as was de-
termined in Dey v. United Rys. Co., 140 Mo. App. 461,
120 S. W. 134, it is true as well that one is not to be
declared careless as a matter of law for failing to leave
his place in the conveyance and go out upon the ground
to make a survey. [Elliott v. Chicago & A. R. Co., 105
Mo. App. 523, 80 S. W. 270.] Here the plaintiff ap-
proached the track with care, his horse and conveyance
under control. From the head of the horse to the end
of the surrey, it is said to be twelve feet and plaintiff
was seated probably two feet beyond on the foremost
seat—in all, fourteen feet from the rail. The view was
obscured to within fourteen feet of the track by weeds
and it appears, too, the body of the passing locomotive
extended as much as two feet north of the rail. Con-
sidering these facts, it appears ordinary prudence was
exercised when plaintiff leaned forward and both looked
and listened seventeen or eighteen feet north of the
track, for then his horse was within six, ten or twelve
feet of the rail, and it was dangerous to drive the horse
nearer for the purpose. Besides, as before stated, he
was authorized to assume defendant's locomotive would

157 App—5

be sounding a signal, if one were near. Having heard no sound, his act of driving forward with the horse under such control as to afford him an opportunity to save it from the collision entirely does not disclose such reckless conduct as would have justified the court in directing a verdict for defendant on the score of contributory negligence. Indeed, when the view of the track is obscured to within a few feet of the rail as here, one in a highway may presuppose the operatives of the locomotive are duly careful, and the precepts of ordinary care do not enjoin that he should go forward upon the ground to search out a danger which was ascertainable from a few feet beyond by looking and listening, except for the fact that defendant omitted to disclose it through its failure to perform the duties as to signals which the law enjoins. [See Elliott v. Chicago & A. R. Co., 105 Mo. App. 523, 80 S. W. 270; Turney v. United Rys. Co., 155 Mo. App. 513, 135 S. W. 93.] As plaintiff's view was obscured, except for a short distance, when he stopped, leaned forward, looked and listened eighteen feet north of the rail, it is clear that we may not declare him negligent as a matter of law in the circumstances of the case, for such seems to conform to the requirements of ordinary care in the situation which there obtained, and, no doubt, had those in charge of the locomotive observed the requirement as to speed and signals, the crossing would have been made in safety. At any rate, the matter was for the jury, for the danger was not open and obvious at all events and the question was one to be determined by practical men in the circumstances of the case. [Connor v. Wabash R. Co., 149 Mo. App. 675, 129 S. W. 777.]

But it is argued though such be a question for the jury, the court erred in referring the specification of negligence with respect to the unlawful speed of the locomotive to the jury, for it is said, though the bell was not sounded or other alarm given and the engine was actually running four miles in excess of the ordinance limit, it conclusively appears the matter of speed was not

Moore v. Railroad.

the proximate cause of the injury. It is argued the mere violation of the speed ordinance alone affords no ground of recovery, unless it appears the collision would not have occurred but for the fact of unlawful speed. Under this assignment, it is said that had the locomotive been running at eight miles per hour instead of twelve, the collision with the surrey would have occurred identically as it did, for it appears plaintiff could not have crossed the track before the approaching engine without it and therefore the court should have withdrawn this matter from the jury. The proximate cause of an injury is a matter that may be inferred from facts and circumstances in proof as well as found from direct and positive evidence. The circumstance that, after the forefeet of plaintiff's horse were upon the north rail of the track, he had sufficient time to turn the animal to the westward and save it from the catastrophe before the collision occurred with the fore wheel of the surrey suggests that it might have been possible for him to have whipped the animal on and passed over the crossing before the collision, had the locomotive been running at eight miles per hour instead of twelve for only a short distance before it reached the crossing. At any rate, a collision might have been escaped with the forward part of the surrey in which plaintiff was situate and the calamity befallen those in the rear only and it is the proximate cause of plaintiff's injury alone with which we are concerned on this appeal. It is suggested, too, in this connection that the high speed of the locomotive is to be considered with respect to the proximate cause only at the time of the collision. It is said that though the locomotive may have been running at twelve miles per hour during all the time for a quarter of a mile east of the crossing within the city of Mexico, such violation of the ordinance may not be invoked in aid of the proximate cause of the injury which occurred at the crossing no more than might the violation of a speed ordinance in another town prior to the time the locomotive reached

the city of Mexico. We are not persuaded to the full scope of this argument, for the violation of duty here relied upon is negligence *per se*, as a matter of law, and consists in the violation of the ordinance of the city which was enacted for the regulation of defendant's conduct on the one hand and the benefit of plaintiff on the other at all points where plaintiff either saw, or might by exercising ordinary care to that end have seen, its approach. Though the entire limits of the city are not to be considered, the unlawful speed of the locomotive which is shown by the evidence to have proceeded for a quarter of a mile before the crossing was reached is available to plaintiff for a large portion of that distance on a consideration of the proximate cause of his injury. We say this for the reason that plaintiff, in approaching the track, had the right to assume that defendant's locomotive was being operated in conformity with the ordinance and that it was not being operated within a reasonable distance of the crossing at a rate of speed beyond eight miles per hour. As plaintiff approached the track, assuming defendant's locomotive was not being operated at an unlawful rate of speed within a distance open to his view, at least after he emerged from beyond the growth of weeds shown to be fourteen feet north of the rail, he was entitled to regulate his conduct accordingly, whether he actually saw the locomotive or not, for to this extent the ordinance inures to his benefit. So much of defendant's conduct as violated the ordinance within the radius of such vision and afforded plaintiff an opportunity to conduct himself with actual or constructive notice of the approach of the engine ought in good morals at least be available in the consideration of the proximate cause of the injury. There is sufficient in the circumstances to render the question one for the jury. [Stotler v. Chicago & A. R. Co., 200 Mo. 107, 136, 98 S. W. 509.]

It is argued plaintiff's first instruction is erroneous because it omits to require the jury to find the excessive

speed of the locomotive was the proximate cause of the injury. The instruction is certainly free from this criticism for it expressly requires the jury to find that plaintiff's injury resulted "as a direct consequence" of running the locomotive at a rate of speed in excess of eight miles per hour and is obviously sufficient.

It is argued plaintiff's instructions should not have been given because they omitted to define contributory negligence. As to this matter, it may be said all the instructions require the jury to find that plaintiff exercised ordinary care in the circumstances of the case and the matter of not defining contributory negligence more particularly is one of non-direction only, on which reversible error may be predicated. Besides, defendant's instructions on that question sufficiently enlightened the jury.

The evidence is, that plaintiff was permanently injured and among other things his left leg was broken in two places, with the result that it is one and one-half inches shorter than the other. Besides, he has a stiff ankle. With this proof in the case, it is argued the court erred in giving plaintiff's instruction on the measure of damages authorizing consideration, as an element thereof, of his capacity for earning a livelihood after attaining his majority. Plaintiff was eleven years old at the time of the trial and there is no evidence that he had ever earned anything nor is it shown as to whether or not he is possessed of an estate or is without more than ordinary means and will be required to subsist by his own efforts after maturity. Because of this state of the proof, it is said the court should not have submitted to the jury the question as to whether or not his earning capacity was depreciated, as an element of recovery. The argument is unsound, for, whatever the situation of plaintiff may be, he is none the less subject to the vicissitudes of fortune and is entitled to the full measure of his earning capacity unimpaired by defendant's tort. Though no evidence be introduced on the subject whatever, it is the rule of decision that, in dealing with infants, the question of

damages because of the impairment of future earning capacity may be reckoned with by the jury, in the absence of express evidence, as a matter within its sound judgment, experience and conscience. The following authorities are directly in point and conclude the whole matter: Stotler v. Chicago & A. R. Co., 200 Mo. 107, 142, 98 S. W. 569; Wise v. St. Louis Transit Co., 198 Mo. 546, 95 S. W. 898. Mr. Watson, in his work on Damages, section 514, says substantially, in speaking of an infant whose earning capacity appears to be wholly untried, that to require evidence of specific pecuniary loss in any amount in such cases would be to deny a recovery on this ground altogether. The result therefore is that a distinction is expressly recognized between such cases and cases where the plaintiffs are adults. The fact of the inability to prove the prior or probable earning capacity is not to be invoked against the infant, for, as between the wrongdoer and the innocent victim of the tort, the former and not the latter should suffer the consequences of any uncertainty in the extent of the loss.

The jury awarded plaintiff a recovery of $7000, and it is urged the amount is excessive, but we are not so persuaded, for the injuries received are both severe and permanent. It appears plaintiff suffered, besides a complete complex fracture of the femur (thigh bone), a fracture of both bones in the left leg below the knee and an injury to his ankle and knees as well. He was rendered unconscious and was dangerously ill for a number of days. He received as well a number of bruises about the body and legs and a gash behind the ear. Then, too, the force of the collision was sufficient to occasion a hemorrhage from the ear and a severe shock to his nervous system. From these injuries and shock, he was rendered unconscious and so remained for some time and suffered numerous convulsions. It is said he had four convulsions in one night. He was confined to his bed for a period of eight weeks and was required to use two crutches in moving around for about fourteen months thereafter.

For some time after this he moved with one crutch only. There is slight injury to his knee, but his ankle is permanently stiffened, and the physicians who made measurements say that his left leg at the time of the trial was one and one-half inches shorter than the right; and that such injuries are permanent is not to be denied. He walks with a limp and though healthy, strong and robust before the injury, his constitution is now considerably impaired. He suffered great and excruciating pain from the injuries together with numerous bruises and blisters which were on his body and about his limbs. In view of these facts, we are not inclined to disturb the verdict. The trial court thought it to be a reasonable recovery and we are of the same opinion.

After having examined all of the arguments advanced, we have been unable to discover reversible error in the record. The case seems to have been well and carefully tried. The instructions for plaintiff are eminently fair and those for defendant present the matter for it from every point of view. The court did not err in refusing the several instructions requested by defendant, for every pertinent principle of the law of the case was incorporated in those given. Fifteen instructions were given at the instance of defendant and it is in no position to complain of not having more. The judgment should be affirmed. It is so ordered. *Reynolds. P. J.,* and *Caulfield, J.,* concur.